## WELLMAN v. MIDLAND STEEL CO.

(Circuit Court, D. Indiana. January 21, 1901.)

No. 9,659.

1. COMBINATION PATENT—CONSTRUCTION.

Where the claim for a patent is for a combination, it must be for an operative combination; and if an element essential to make it operative is shown and described in the specification, but is omitted in the claim, it must be read into the claim.

2. SAME—INFRINGEMENT.

In order to constitute an infringement of a combination patent, there must be found in the infringing device all the elements contained in the patent alleged to be infringed, or their fair legal equivalents.

3. SAME—PATENTABILITY.

A combination, to be patentable, must produce a single new and useful result, or an old result in a better and cheaper manner, as the product of the combination; and where the combination produces an aggregate of two or more results, each the complete result of one of the combined elements, it does not constitute a patentable combination.

4. SAME—CHARGING FURNACES.

The Wellman patent, No. 408,152, having the same elements as the Wellman patent, No. 394,419, each for an apparatus for charging and drawing furnaces, with the superadded means of rotating the lifting arm and grappling device, is a patent for an aggregation, and not for a patentable combination.

5. SAME.

The Wellman patent, No. 394,419, for an apparatus for charging and drawing furnaces, is not infringed, as to the first and second claims, by a sliding frame in defendant's device mounted upon a tilting frame, with a charging arm having no longitudinal movement within the tilting frame, which is in no sense the equivalent of the grappling levers or tongs of the complainant's device.

In Equity.

Jesse B. Fay and Robert H. Parkinson, for complainant.

William Du Val Brown and John R. Bennett, for defendant.

BAKER, District Judge. This suit involves two patents,—No. 394,419, issued December 11, 1888, and No. 408,152, issued July 30, 1889,—each for apparatus for charging and drawing furnaces, which patents are alleged to be infringed by the defendant. The defenses are want of patentable novelty, noninfringement, and that the combination disclosed in each patent constitutes simply an aggregation, and not a patentable combination.

In the specification of patent No. 394,419 it is said:

"My invention relates to apparatus for charging and drawing furnaces, such apparatus being mounted on a car adapted to be moved along in front of the line of furnaces, the grappling mechanism being operated by hydraulic rams, to the end that, for instance, ingots of any size may be lifted from a car, charged, and drawn to and from the respective furnaces, and delivered onto the table of the reducing rolls, with dispatch, and with only such manual labor as is necessary in manipulating the valves of the rams and of the transferring engine."

From this statement it will be seen that the patentee was dealing with a purely mechanical problem, in making an apparatus for use in charging and drawing ingots from a heating furnace, whereby a

certain amount of manual labor could be dispensed with. It is an apparatus for charging and drawing furnaces, which is to be mounted on an ordinary platform car, adapted to move along in front of a line of furnaces, and provided with grappling mechanism to be operated by hydraulic rams or other suitable motors. The car bearing the ingot is brought forward to a position opposite the door of the heating furnace to be charged. The car carrying the apparatus is then brought into place directly opposite the ingot which is to be deposited in the furnace. While both cars are thus located, the grappling mechanism or tongs are lowered so as to seize the ingot, which is accomplished by lowering the inner end of the tilting frame by means of hydraulic rams. The grappling mechanism or tongs are closed by the operation of a hydraulic ram so as to firmly grip or grasp the ingot. The grappling mechanism or tongs grasping the ingot are raised by the elevation of the inner end of the tilting frame, and thus the ingot is brought to a proper height for charging into the furnace. The sliding frame upon which the grappling mechanism or tongs are mounted is then moved forward by means of a hydraulic ram until the ingot is inserted into the furnace; and then the tilting frame is lowered so as to deposit the ingot on the floor of the furnace, when the grappling levers or tongs are operated to release the ingot, and are again raised by raising the inner end of the tilting frame high enough to permit of their being withdrawn by the backward movement of the sliding frame. When the ingot is brought to the proper degree of heat for treatment, the tongs are again introduced into the furnace by the same operation, and lowered to seize the heated ingot, and are then raised, carrying the ingot firmly grasped and withdrawn from the furnace, when the tongs are lowered to deposit the ingot on the car, when they are caused to release it. This is the mode of operation in charging and drawing a furnace, as disclosed in the specification and claims of the patent.

The construction of this patent, and especially the question of infringement, depend largely on the meaning to be given to the expression "grappling mechanism," employed both in the specification and claims. The complainant's expert says:

"The question of what constitutes the grappling devices in defendant's machine, together with the question whether these be the equivalents of the grappling device shown as tongs in 'said Wellman patent, I regard * * * as the vital question in this controversy."

Some extracts from the specification will clearly disclose the character of the grappling mechanism and its operation and function:

"On top and near the forward end of frame, G, is attached a heavy plate, I, and to this plate, by means of studs, I', are fulcrummed the grappling levers or tongs, J; these levers being arranged side by side as shown. The forward ends of these levers are offset, first outward and then downward (see Figs. 1 & 3), so as to span, when distended, an ingot of large size; the extremes of these levers being provided with prods, j, or other suitable device, arranged on their inner faces for grasping the ingots. Levers, J, in plan are shaped substantially as shown in Fig. 2; the rear ends thereof trending outward, and forming substantially lateral inclines."

Again:

"By operating plunger, k, rearward, the forward ends of levers, J, are spread apart, and by actuating plunger, k, forward, the forward ends of

levers, J, are made to approach each other to clamp the ingot or other body; and these levers maintain such clamping position so long as the water pressure forward is left in ram, K."

Again:

"To recapitulate: By operating ram, F', the grappling device is raised or lowered as required, and by operating ram, H, the grappling device is moved forward and rearward, and by operating ram, K, the grappling levers are made to grasp or release the load."

Again:

"In operating the apparatus the ingots are brought on car, a', in front of the furnace where they are wanted. The grappling levers, or tongs, as they are more commonly called, are lowered and made to grasp the ingots, after which the tongs are raised and run forward to deliver the ingots into the furnace, whereupon the tongs are lowered until the ingots rest upon the bottom of the furnace, after which the forward ends of the tongs are separated to release the ingot, and the tongs are again raised a trifle and backed out of the furnace."

Having charged the furnace in the manner above described, it is further said:

"In drawing the furnace the tongs are run into the furnace, lowered, and made to grasp the ingot, then raised until the ingot will clear the furnace bottom, and then backed out of the furnace, after which the car, B', is run along the tracks, B, in front of the table, A', where the ingots are deposited."

Thus the nature of the apparatus and the construction, operation, and function of the grappling mechanism, are made clearly manifest. It is true, beyond question, that, in order to charge and draw a furnace as contemplated by the invention, grappling levers or tongs were absolutely essential, and that was the only known way in which the operation could be performed.

With this understanding of the specification, we come to the consideration of the two claims alleged to be infringed. These claims are:

"(1) In an apparatus for charging and drawing furnaces the combination with a car of a tilting frame thereon, the latter carrying longitudinally movable grappling devices, substantially as set forth. (2) In an apparatus, the combination with a car of a tilting frame thereon, a sliding frame mounted on said tilting frame, and grappling devices carried by said sliding frame, substantially as set forth."

The only difference between the first and second claims is that the sliding frame mounted on the tilting frame is by recital made an element of the combination of the second claim; and in view thereof the grappling devices are referred to as being carried by said sliding frame, instead of as "longitudinally movable grappling devices," as in the first claim. But the sliding frame must be read into the first claim in order to make it an operative combination. In no other way can the "longitudinally movable grappling devices" be operated. No method of operating the "longitudinally movable grappling devices" is shown or suggested, except by means of the sliding frame mounted on the tilting frame. Where the claim is for a combination, it must be for an operative combination; and, if an element essential to make it operative is shown and described in the specification, and is omitted in the claim, it must be read into the

claim. Such an interpretation is justified and required by the concluding language, "substantially as set forth." Thus read, as it must be, the combination in the first claim embodies the same elements as those found in the second claim. In order to constitute an infringement of a combination patent, there must be found in the infringing device all the elements contained in the patent alleged to be infringed, or their fair legal equivalents. The defendant's device is for charging an open-hearth melting furnace, as distinguished from a heating furnace. The metal to be melted is mechanically charged into the furnace, but is not drawn therefrom in the manner of ingots from a heating furnace. In front of the furnaces are parallel tracks, upon which a number of ordinary cars run for the purpose of bringing from the yard or elsewhere to the furnace doors loads of scrap or broken pig to be charged into the furnace. In connection with these small cars are used charging pans or boxes, in which the metal charges are placed. The charging apparatus in the defendant's device is what is known as an overhead traveling crane, which is supported upon elevated parallel tracks, one directly above and running parallel with the front of the furnaces, and the other separated a certain distance therefrom, depending upon the dimensions of the crane. The crane consists of a bridge supported upon wheels resting and traveling back and forth upon the parallel tracks, and a car or trolley supported upon wheels resting and traveling back and forth upon parallel tracks running longitudinally upon the bridge, so that by the movement of the bridge the car or trolley carrying the charging arm and its operating mechanism are moved along in front of the furnaces, while by the movement of the car or trolley longitudinally upon the bridge the charging arm can be introduced into and withdrawn from the furnace. Mounted within the car or trolley is a tilting frame pivoted at or near its center to permit of the front end being raised or lowered for the purpose of raising or lowering the charging arm or bar, which is mounted upon and projects from it. It is thus seen that in the defendant's device there is no sliding frame mounted upon a tilting frame, and that the charging arm has no longitudinal movement whatever within the tilting frame. The charging arm or bar is in no true sense grappling levers or tongs, for it does not possess the function of grasping, seizing, or clamping the pan or box containing the scrap or pig to be charged into the furnace. This arm or bar at its outer end is provided with what is termed a "tennon," which engages with a corresponding recess in the inner end of the charging pan or box, and is then locked so as not to permit of its becoming uncoupled during the operation of lifting it, with its load, and charging the furnace. The charging arm or bar of the defendant's device is in no sense the equivalent of the grappling levers or tongs of the complainant's device. Moreover, the claims are for a mere aggregation, as distinguished from a patentable combination. A combination, to be patentable, must produce a single new and useful result, or an old result in a better and cheaper manner, as the product of the combination. If the combination produces an aggregate of two or more results, each the complete result of one of the combined elements, it does not constitute a patentable

combination. There is not shown to be any co-operation or conjoint action between the car, which is made an element of each claim, and the apparatus for charging and drawing furnaces mounted thereon. The car simply supports and carries the apparatus precisely as it would support and carry any other load, and it in no way co-operates or co-acts with the apparatus in charging and drawing furnaces. The operation of the apparatus in no wise depends upon or is affected by the car, for its operation would be precisely the same whether it was supported on the car, or upon a stationary platform, or upon the ground. The function of the car is entirely separate and distinct from that of the apparatus, and is simply that of any other ordinary platform car movable upon the tracks. The function of the car as such ceases before the function of the apparatus begins to operate, for the car must be stopped and be at rest before the operation of the apparatus begins.

The apparatus shown and described in patent No. 408,152 is substantially the same as the apparatus of patent No. 394,419, and the improvement claimed relates to means for rotating the lifting arm upon which the grappling device or tongs are mounted in the apparatus of the prior patent. The court agrees with the complainant's expert that:

"The invention of the second patent in suit (408,152) is in the nature of an addition to that of the first patent, such addition involving the reversibility of the grappling device."

And the expert again says:

"The Wellman device, so far as last above previously described, is found in both patents of the present suit, to wit. 394,419 and 408,152; but the patent No. 408,152 sets forth an additional movement of the lifting arm and its hand or grappling device, to wit, a rotary movement whereby the load seized by the hand and carried by the arm may be reversed or turned over."

The apparatus of this patent, therefore, is identically the same as that of the first patent, with the added means for rotating the lifting arm on which the grappling device or tongs are mounted. The claims of patent No. 408,152 have the same elements as the claims of patent No. 394,419, with the superadded means of rotating the lifting arm and grappling devices. For the reasons stated in respect of patent No. 394,419, the defendant's device for charging open-hearth furnaces is not an infringement of any of the claims of patent No. 408,152, and the patent is for an aggregation, and not for a patentable combination. From these views it follows that it is not necessary to pass upon the question of want of patentable novelty. The bill of complaint must be dismissed for want of equity at the costs of the complainant.