### JACOBS MFG. CO. v. T. R. ALMOND MFG. CO.

(Circuit Court, E. D. New York. March 27, 1909.)

**1. PATENTS (§ 26*)—INVENTION—COMBINATION OF OLD ELEMENTS.**

The combination of a well-known and unpatentable idea with a particular form of device described in an expired patent cannot be made the basis for a valid patent for a new term when no new use or device is shown, except in that the particular combination has never been made between exactly the same elements before, and when the same use has been shown in connection with equivalent devices differing only in immaterial respects.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

**2. PATENTS (§ 328*)—INVENTION—DRILL-CHUCK.**

The Jacobs patent, No. 709,014, for a drill-chuck having means for opening and closing the tool-holding jaws with a key, construed, and *held* void for lack of invention in view of the prior art. Claim 3 also *held* not infringed if conceded validity.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity.

Redding, Kiddle & Greeley (William B. Greeley and William A. Redding, of counsel), for complainant.

Briesen & Knauth (Arthur v. Briesen and Hans v. Briesen, of counsel), for defendant.

CHATFIELD, District Judge. The present action arises on a patent obtained by one Arthur I. Jacobs for the use of a key with cogs or teeth to turn the sleeve or roughened band which is commonly and familiarly used in opening and closing the jaws of a chuck; that

---

is, an attachment to hold a drill at the extremity of the shaft of a lathe or other boring tool.

The Jacobs patent, on which the present claim of infringement is based, No. 709,014, was granted upon the 16th day of September, 1902. The patent specifies the use of the device at considerable length, and states that the object of the invention is to construct a strong chuck of the nature described, "with simple, cheap, and convenient means for opening and closing the tool-holding jaws." The specifications further show that the particular "simple, cheap, and convenient means" for which Jacobs desired a patent was, as has been indicated, a key, with gear-teeth, the key to be inserted in a socket, or to fit over a pin in the body of the chuck.

The claims of the patent are three in number. In claims 1 and 2 the form of the chuck itself, and also the use of a key of the above description, are specified, but no mention is made of an opening to be used as a key-seat, nor is there any description of the way in which the key is to be located, so that power may be applied by the gear-teeth. In claim 3 the description of the chuck and the use of the key is substantially similar to that in claims 1 and 2, but the chuck is said to have teeth upon the edge of the sleeve, "and a key-recess in the body back of the sleeve adapted to receive a toothed key, substantially as specified."

It is apparent from an examination of the specifications that "substantially as specified" was intended to refer to an opening in the body of the chuck itself. The drawings, particularly Fig. 2, indicate both the socket for the reception of this key, and the location of that socket with reference to the sleeve upon which the teeth to engage with those of the key are cut. The words, "in the body back of the sleeve," in claim 3, are interpreted by the solicitors for the complainant to mean inside of, that is, within or nearer the axis, and the key-seat, under that interpretation, could be at any desirable place throughout the entire portion of the chuck referred to as "the body." If claim 3 is to be construed thus broadly, it makes no difference whether claims 1 and 2 are distinguishable from claim 3; but if claim 3 is to be restricted to a key-recess back of—that is, toward the spindle end of—the chuck as shown by the drawings, then the meaning of claims 1 and 2 becomes more important, and will be discussed later.

The file-wrapper of the patent in question shows that all the claims were modified upon objection by the examiners in the Patent Office, and that, as finally allowed, no substantial difference exists between claims 1, 2, and 3, unless it be the location and shape of the key-seat above mentioned, for in all of them the bearing for the key must be understood, unless the claim should be open to the objection of being impracticable. The complainant contends that the necessity for a base or aperture for the insertion of the key is so apparent, and the meaning is so plain from the specifications of the patent, that claims 1 and 2 should be held to cover the use of a key such as that described, inserted at any place in the chuck convenient for allowing the teeth to engage with those on the sleeve. Wellman v. Midland Steel Co. (C. C.) 106 Fed. 221. The defendant contends that claims 1 and 2 are no broader than claim 3, if limited by the specifications, under the

doctrine of Snow v. Lake Shore & Michigan Southern Railway Co., 121 U. S. 617, 7 Sup. Ct. 1343, 30 L. Ed. 1004, and also claims that, unless a key-seat or location for the key is described, claims 1 and 2 are void for indefiniteness. This point becomes important when it is noted that in no chuck ever manufactured or placed upon the market has the key been applied back of, or on the spindle side of, the sleeve in question. To do this would necessitate the turning of the key to the left to tighten the jaws, unless, as the complainant ingeniously suggests, the sleeve should be fitted with a left-hand screw. But it is apparent that to construct a chuck by which the jaws would be tightened with a right-hand turning of the key, while a similar turning of the sleeve would loosen the jaws, would be an inconvenient and hardly advantageous or salable style of construction. The practicable method, and that which has actually been employed, is to locate the seat for the key below the sleeve—that is, toward the jaw-end of the chuck—and to have the key engage with teeth upon the lower side of the sleeve, thus securing a right-hand screw motion to all of the parts of the chuck.

Another extremely important point in the consideration of this case is that the idea of a chuck having jaws operating in recesses, which jaws move in and out by a thread, under the influence of some outward force, is old and.has been the basis of many patents. Likewise, for years, upon small machines, and with small drills, the application of a sleeve, in which is cut the thread which shall move the jaws of the chuck in or out, is not only well known, but was made the basis of a valid patent, issued on February 8, 1876, under No. 173,152, to Thomas R. Almond, the assignor of the defendant herein. The Almond chuck, so called, was extremely successful, and for many years had the largest sale of any chuck in the market. Certain other chucks, such as the Cushman, the Whiton, and the Pratt & Whitney, were sold for substantially the same use, and all of the chucks in use while the Almond chuck predominated the market were operated by the roughened band or sleeve, to be turned with the hand, assisted by a wrench or spanner consisting of a piece of metal, a portion of which followed the arc of the circumference of the sleeve and contained upon its inner side a peg fitting into a hole in the surface of the sleeve. The object of the spanner was to tighten the sleeve, and thus the jaws of the chuck, to an extent beyond that possible by applying one's fingers directly to the sleeve itself. A moment's thought will show the point (agreed upon by the experts for both the complainant and the defendant) in which the use of a spanner proved to be objectionable, and which was actually removed, and the quickness and ease of operation (that is, in inserting and removing a drill or reamer) was benefited by the adoption of the toothed key. The spanner applies the force in the direction in which the sleeve is turned, and the use of the left hand is required in holding the chuck or the drill, while force is being applied to the sleeve by means of the spanner, in order to prevent the turning of the entire chuck. In addition, if the jaws of the chuck be loosened, under the old system, the drill or other tool, if the arm carrying the chuck were located in a vertical position, would fall out unless retained in place with the hand, and when both hands were oc-

cupied in working the spanner the drill would be much more apt to fall than if the left hand were free and the right hand alone needed to turn the key, which by its insertion in the body of the chuck itself would not only cause no tendency to turn the chuck, but would, of itself, hold the chuck against the turning of the sleeve. The experts, as has been said, for both parties to this suit agree in pointing out these matters of improvement and advantage in the method set forth in the Jacobs patent.

Further testimony has been introduced to show that the sale of the Jacobs appliances, which are manufactured under an assignment by Jacobs to the complainant corporation, has been large, has increased steadily, and the Jacobs chuck has supplanted, to a large extent, the Almond chuck of the spanner design. Recently the Almond chuck has been placed upon the market, with a geared or toothed key, instead of a spanner, and the present form of the Almond chuck is substantially like that put upon the market by the complainant corporation, with the exception that in the Almond chuck the jaw recesses are carried farther back and are left open, while in the Jacobs chuck the sleeve covers the upper end of the jaw recesses and the jaws work entirely within the body of the chuck.

It is claimed by the defendant that the open method of construction is advantageous because of the ease with which foreign particles may be removed, while the complainants contend that their method of construction is more desirable commercially, for the reason that dirt will be kept out and wear saved, if the upper or back end of these recesses be entirely covered by the sleeve.

This is a question of competition and desirability of construction, rather than anything bearing upon the validity of the patents, as the location of these jaw recesses has nothing to do with the construction or operation of the chuck itself, nor of the use of a key for turning the sleeve. We must, therefore, determine three questions: (1) Is the present method of construction used by the defendant an infringement of the complainant's patent, that patent being valid? (2) Has the complainant specified and included in its claims a patentable combination, or has it merely attempted to control an old device, covered by previous patents, when used in other combinations; i. e., did the use of a key call for merely mechanical application, and not for the use of invention, if applied to the well-known Almond chuck? (3) If the application were patentable, and called for the exercise of invention, has the complainant's assignor obtained a patent limited to the undesirable device calling for the use of a key back of the sleeve as described in the third claim of the letters patent?

As to the first point, much discussion is unnecessary. The patent upon the Almond chuck had expired at the time Jacobs filed his application; there being at that time upon the market both the Almond chuck and the Cushman chuck, operating upon the same principle and with the same arrangement of parts. It will be assumed that Jacobs, in patenting a key for operating a chuck of exactly the same method of construction and arrangement, had in mind a chuck of the Almond type or form; and, in fact, Jacobs' letters patent state that his invention has for its object not the manufacture of the chuck,

but the making of a chuck of that nature with a certain method for opening and closing the tool-holding jaws. The Jacobs patent exactly describes the Almond chuck, in so far as the chuck itself is concerned, and the only difference is in the placing of teeth upon the edge of the sleeve, and the arrangement for using a key to engage those teeth. The hole for the spanner is shown upon a model chuck introduced in evidence, even where a key is also provided for. It may be assumed, therefore, that the Jacobs patent was an attempt to apply the old device of a key to an old and well-known form of chuck, for the purpose of controlling the manufacture of chucks fitted with this particular key device, and that it was not Jacobs' intention to attempt the repatenting of the chuck itself, on which the original patent had already expired.

It has been assumed throughout the case, and there is no ground for questioning the proposition, that the present form of the Almond chuck infringes the Jacobs patent, if valid, unless it be that the Jacobs patent is limited so as to cover the use of the key merely in the one position, back of or toward the spindle end of the chuck, as shown both in the Jacobs drawings, and as stated in his claims. This exception will be more specifically discussed under the third point, and need only be stated here.

The second question, whether the use of a key, in order to turn the sleeve of a chuck, was a novel and patentable idea at the time of obtaining the Jacobs patent, requires the examination of several of the patents introduced in the case, including those of Washburn, No. 82,571, September 29, 1868; Whiton, No. 58,704, October 9, 1866; Whiton, No. 83,349, October 20, 1868; and particularly Whiton, No. 203,571, May 14, 1878. These patents are particularly interesting, not only in that they are claimed to have involved the use of a key for opening and closing the jaws of a chuck like that in question, and thus to have prevented, for a number of years after the taking out of the Almond patent in 1875, any use by the defendant company of the key device, but also the defendant company in August, 1905, in reply to a letter from the solicitors for the complainant, stated that the Washburn and Whiton patents were the authority of the Almond Company for their manufacture and placing upon the market of Almond chucks fitted with a toothed key similar to those placed upon the market by the Jacobs Company.

The complainant brushes aside all of the patents relating to chucks operated or furnished with keys, whether these keys be fitted with a worm or teeth, because of essential differences in the internal formation of the chuck. His patent is based upon the simple combination of a chuck of the Almond design in its internal construction with a key such as had been used in patented chucks of a different style. When the claims were being examined in the Patent Office, the examiners especially rejected any attempt to patent the key itself, and this was acquiesced in by Jacobs. But at the suggestion of the examiners, the combination described in Jacobs' specifications and claims was limited to include the chuck described, "with means adapted to receive" the key. The Patent Office did not consider the question, so far as the file-wrapper shows, of the patentability of the idea now

under consideration, namely, the use of the key instead of some other means of turning the sleeve, but confined its examination to the question of whether any prior patent disclosed the use of such a key, with a chuck having an annular outwardly opening nut recess, with a sleeve encircling the body, and with teeth on the edge of the sleeve. The patent as issued, therefore, seems to have covered the combination of three things, a chuck like the Almond chuck, the placing of teeth upon the edge of the sleeve of said chuck, and the use of a key to engage the teeth upon the sleeve.

It may be remarked here that Whiton, in his patent of 1878, says:

"In nearly all drill-chucks the power to operate them is applied in the direction of the rotation of the chuck; consequently the chuck must be blocked or held from turning in some way while the power is being applied; but by the use of my invention the power is applied with great force at right angles to the rotation of the chuck; consequently it remains stationary without the use of blocking or other means of holding it in position."

This patent to Whiton covered a worm gear encircling the body of the chuck, with a key or detachable bearing, carrying a worm shaft, and, as shown by the language quoted, the object of the application of this worm gear was for exactly the same purpose, and in substantially the same way, as that now claimed by the Jacobs patent. This worm gear, of course, differs from the teeth of the Jacobs patent, but in the Washburn patent of September 29, 1868, No. 82,571, a key with teeth was shown, serving the same purpose as the key with the worm in the Whiton patent; and the two together would seem to completely anticipate the mere idea of applying the key to the turning portion of a drill-chuck, to obviate the difficulties pointed out in the Almond design.

If they had been giving full weight to the existence of these patents, and of various others set forth in the record, but which are not as typical as the two recited, the examiners in the Patent Office, and the expert called by the complainant, would have great difficulty in differentiating the ideas of the Jacobs patent from those of the Washburn and Whiton patents above referred to, if no examination of the interior construction of the chuck described by Jacobs had been made. And it is not considered that the combination of a well-known and unpatentable idea with a particular form of device described in an old and expired patent can be made the basis of a valid patent for a new term, when no use or device is shown except in so far as the particular combination has never been made between exactly the same elements before, and when the same use has been shown in connection with equivalent devices of a form differing in immaterial respects. Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 489–491, 20 Sup. Ct. 708, 44 L. Ed. 856. Such a combination does not amount to a new application of an old device to an old form of construction, wherein there is novelty in the application itself. It is merely a different application, without novelty, except that the elements combined have not been united in one structure before.

For these reasons, it seems impossible to hold the Jacobs patent valid, whatever interpretation may be given to the claims therein contained.

It will be observed that Jacobs has specified an alternative form of key, which is to fit over a pin or pins upon the body back of the sleeve. Claim 3 is confined to a key inserted in a recess, and therefore the form of key to be used with a pin must be read upon claims 1 and 2. The patentee Jacobs, moreover, testified that by the words "back of the sleeve" he meant toward the spindle end of the lathe, and he therefore needs the aid of claims 1 and 2 if any other position of the key-seat is to be held patented by him. The contention, therefore, that the defendant's chuck, having teeth upon the jaw side of the sleeve, and recesses for the insertion of the key at that point, is an infringement of the complainant's claim 3. especially assuming that the mere use of the key has been anticipated, must be held unfounded; and the only remaining question, although perhaps rendered unnecessary, is to consider whether claims 1 and 2 are merely equivalent to claim 3, and whether, if not, they are too indefinite to be of any effect whatever.

As has been said, the description in the patent, and the devices set forth in the drawings, whereby pins may be employed, must be construed as referring to claims 1 and 2. The necessity of having some bearing or seat for the key is, like a fulcrum for a lever, a proposition that must necessarily be understood in any such description, and this court would therefore conclude that claims 1 and 2 may be considered sufficient in form to be the basis of a slightly different claim than that of claim 3, rather than to consider that a necessary element of description has been omitted.

Inasmuch, however, as the entire patent would seem to be invalid for the reasons above stated, decree must be for the defendant.