WILSON TROLLEY CATCHER CO. v. FRANK RIDLON CO. et al.

(Circuit Court, D. Massachusetts. October 14, 1909.)

No. 303.

PATENTS (§ 328*)—INFRINGEMENT—TROLLEY CONTROLLER.

The Lord patent, No. 548,074, for a trolley pole and rope controller, claim 4, which claims broadly a tension device for the rope and an automatic lock for locking the tension device when the trolley leaves the conductor, to save it from invalidity by reason of its broad terms, must be limited to substantially the arrangement of parts and the locking mechanism described in the patent. As so construed, *held* not infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. Suit by the Wilson Trolley Catcher Company against Frank Ridlon Company and others. Bill dismissed.

J. S. Rusk, for complainant.
Allen Webster, for defendants.

COLT, Circuit Judge. This is a suit for infringement of letters patent No. 548,074, granted October 15, 1895, to Charles A. Lord, for "improvements in trolley pole and rope controllers." The main invention covered by the patent relates to an automatic lock for locking the tension device when the trolley pole leaves the wire. The question of infringement turns upon the merit of the Lord invention, and its scope in view of the state of the art.

The claim in issue reads as follows:

"4. In combination with a trolley pole and with a trolley rope, a tension device for the rope, and an automatic lock for locking the tension device when the trolley leaves the conductor."

This is the broad claim of the patent. The other seven claims are limited in some way to the specific form and arrangement of the devices described in the specification and shown in the drawings of the patent.

Upon its face claim 4 covers the combination of any kind of trolley pole, trolley rope, tension device, and automatic lock for locking the tension device when the trolley leaves the conductor; and the underlying question in this case is whether the merit and scope of the Lord invention are such as to entitle the patentee to a claim of this breadth.

In the operation of electric trolley cars it is important that the trolley pole, when it accidentally leaves the wire, should be prevented, as far as possible, from being thrown upwards by the action of the trolley spring, thereby rendering the pole liable to become entangled in the cross wires. It is also desirable that the trolley rope should always be kept taut while the pole is on the wire.

The devices for accomplishing these objects at the date of the Lord invention were a spring tension reel for keeping the rope taut while the pole was on the wire, and a supplementary locking and spring mechanism connected with the tension device, which first arrested the upward movement of the pole and then pulled it down towards the top of the car, when the pole was off the wire. In this arrangement the pole, on leaving the wire, was first thrown upward some distance above the wire and then drawn downward a considerable distance below the wire.

As distinguished from this arrangement Lord conceived the idea of a locking device which should instantaneously catch the pole the moment it left the wire and hold it, so that the pole was neither thrown upward above the wire nor pulled downward toward the top of the car.

After stating that one object of the invention is a tension device and another object of the invention is an automatic lock, and describing the purposes of these two devices, the Lord patent says:

"My invention therefore consists of two parts—first, a tension device for keeping the rope taut while the car is proceeding in the ordinary way; and, secondly, in a means for locking such device when the roller leaves the conductor, and thus preventing the end of the pole from being thrown above the level of the conductor itself."

Figure 1 of the patent is a side elevation of the trolley pole and roller, showing the tension device and the automatic locking device.

The tension device here shown is a spring tension reel. The tendency of the spring is to wind up the rope under ordinary conditions. At the same time, when the pole rises to a higher level on the wire, it permits the rope to unwind as this spring is lighter than the trolley spring (not shown in the drawing), and is therefore insufficient to

overcome the upward movement of the trolley pole produced by the trolley spring.

The locking device here shown comprises the locking bolt, 14, which engages a circular series of teeth on the tension reel. This locking bolt is connected by the link, 15, to the disk, 10, being guided by the ribs, 16. From the disk, 10, the rod, 11, extends to the disk, 12. From the disk, 12, extends a rod, 13, to the end of the transverse pin upon which the trolley roller is journaled. The sides of the trolley head, G, are provided with slots, and the ends of this pin upon which the trolley roller is journaled fits within these slots. The roller itself is mounted in a casing through the sides of which the pin passes. Between the bottom of the trolley head and the bottom of the casing is interposed a coil spring, 9. When the roller is on the wire this spring will yield to the pressure from above, and ordinarily will permit the transverse pin to remain near the middle of the slot; but if the roller leaves the wire the resistance from above is removed, and the spring forces the roller to the top of the slot, as indicated in Fig. 1. This movement of the roller actuates the locking device for the reel; in other words, it locks the reel by throwing the locking bolt into engagement with the teeth on the reel, thus preventing the unwinding of any more rope, and therefore catching and holding the trolley pole in approximately the same position as when on the wire, or at least not permitting the end of the pole to rise above the wire. When the pole is replaced on the wire, the pressure from above forces the pin carrying the roller down into the middle of the slot again, and this movement unlocks the reel, by withdrawing the locking bolt from between the projections on the reel.

With respect to this locking device the patentee says in his specification:

"I have therefore provided a locking device operated automatically at the instant the roller leaves the conductor, by means of which the reel is instantly locked, preventing any rope from being wound off, and thus absolutely preventing the trolley spring from raising the pole above the conductor."

As distinguished from the prior art, the Lord mechanism discloses three special and peculiar features: First, the tension device and the locking device are arranged on the pole instead of on the end of the car; second, the locking device is operated by the movement of the roller relatively to the pole instead of by the upward movement of the pole; and, third, the locking device operates instantaneously and so prevents any upward movement of the pole above the wire or downward movement below the wire.

While Lord's idea of an instantaneous locking device was novel and possessed merit, the principle upon which he carried out this idea was defective from a practical standpoint. It is extremely doubtful whether any useful and practical locking device can be constructed by loading the pole with the tension device and locking mechanism, and operating the lock by the movement of the trolley wheel relatively to the pole. In all the devices of this class which have proved to be practical and commercial, the tension reel and the locking mechanism have been arranged on the end of the car, and the lock operated by

the pulling movement of the rope as the pole is forced upward by the trolley spring. This is also true of the other class of devices shown in the prior Yeakley patent, No. 476,028, and the prior Lord patent, No. 498,355, in which the trolley pole is first arrested in its upward movement, and then pulled down towards the top of the car.

It is true that after acquiring title to the Lord patent October 11, 1906, and during the progress of this suit, which was begun November 7, 1906, the complainant equipped an electric car with the Lord device and operated it successfully; but this proof only goes to the extent of showing that the device is operative. It still remains the fact that the Lord patent, since its issue in 1895, has produced no impression on the art; that no device like it, or constructed on the same principles, has ever gone into general use; and that the only one ever built was for the purposes of this suit. Both the defendants' device, and the device manufactured by the complainant, are made under other patents.

For these reasons claim 4 of the Lord patent must be either held to be void by reason of its breadth, or else it must be limited to substantially the arrangement of parts and the locking mechanism described in the patent. When so limited, it is clear that the defendants' device does not infringe this claim, since it does not contain the three special and distinguishing features of the Lord structure:

In the defendants' device the reel and locking mechanism are arranged on the end of the car and not on the pole. The lock is operated by a sudden pulling movement of the rope due to the trolley spring forcing the pole upward, and not by a movement of the roller relative to the pole. The lock does not operate the instant the roller leaves the wire, thereby instantly locking the reel and "thus absolutely preventing the trolley spring from raising the pole above the conductor." On the contrary, in the defendants' device there is a centrifugal lock connected with the tension reel, and the pole is checked in its upward movement only after the upward movement and pull of the rope are sufficient to rotate the reel with force enough to throw out the locking dogs by centrifugal force.

It thus appears that the defendants' device differs from the Lord device in the arrangement of its parts, in the form and operation of its lock mechanism, and in the result accomplished, since it does not prevent the "end of the pole from being thrown above the level of the conductor," which is the very essence of the Lord invention.

The bill must be dismissed on the ground of noninfringement, and a decree may be entered accordingly.