## FRUEHAUF TRAILER CO. v. HIGHWAY TRAILER CO.

No. 2486.

District Court, E. D. Michigan, S. D.
Aug. 21, 1931.

Barnes & Kisselle, of Detroit, Mich. (by Stuart C. Barnes and Lacy Laughlin, both of Detroit, Mich.), Rector, Hibben, Davis & Macauley, of Chicago, Ill. (by Frank Parker Davis, of Chicago, Ill.), and Stevenson, Butzel, Eaman & Long, of Detroit, Mich. (by Rockwell T. Gust, of Detroit, Mich.), for plaintiff.

Robb & Robb, of Cleveland, Ohio (by John F. Robb, of Cleveland, Ohio, and Harry C. Robb, of Washington, D. C.), Robert N. Burton, of Chicago, Ill., and Whittemore, Hulbert, Whittemore & Belknap, of Detroit, Mich. (by Clarence B. Zewadski, of Detroit, Mich.), for defendant.

TUTTLE, District Judge.

The plaintiff sues upon five patents, and the defendant counterclaims upon one patent.

The plaintiff's patents as they are distinguished in the record are Borst patent, No. 1,374,352, issued April 12, 1921 (the first Borst patent); Borst patent, No. 1,383,381, issued July 5, 1921 (the second Borst patent); Land patent, No. 1,400,752, issued December 20, 1921; Hartwick patent, No. 1,351,245, issued August 31, 1920; and Schneider and Fruehauf patent, No. 1,613,728, issued January 11, 1927.

The first four of plaintiff's patents relate to what are known in the art as six-wheel trailer type automotive vehicles, and particularly involve connecting and controlling

means whereby a tractor vehicle, usually a four-wheel truck of some type, is associated in operating pulling relation to the trailer vehicle. The trailer vehicle carries the pay load and is ordinarily known in the art as a semitrailer, and comprises a two-wheeled trailer chassis or body equipped with supports of one kind or another at its front end, for in part supporting the body, or the body and its payload, when the trailer is detached from the traction vehicle. The fifth patent of plaintiff, that of Schneider and Fruehauf, is not for the same specific type of trailer as employed in the inventions of the first four patents, but involves primarily a construction of so-called four-wheel trailer in which the trailer body is mounted upon dolly or truck frames, one of which is provided at each end of the trailer body beneath its main chassis frame. The claims of the fifth patent relate primarily to the spring and shackle mountings between the axles and the so-called dolly or truck frames, certain radius rod parts, and specific stop contrivances for limiting the turning of the truck frames relatively to the chassis frame or body of the trailer.

Before entering upon the merits of this controversy in detail in respect to each individual patent, as I propose to do in regular course, I note that in the first Borst patent, No. 1,374,352, and the second Borst patent, No. 1,383,381, disclaimers were filed just one month, and defendant was advised of them about twenty days, before the date this cause was set for trial. This was after all issues had been raised in the pleadings, and all depositions, of which there were a great many taken by both parties, were completed.

In expressing my views about disclaimers, I do so because I am interested in the subject and should be glad to be helpful in solving some of the troublesome problems presented by disclaimers. There is no inclination on my part to avoid the decisions which ought to guide this court. Every one interested in the subject of disclaimers recognizes that the law applicable thereto is still in a very unsettled state. Individual courts have not satisfied themselves as to just what are to be the final holdings upon this subject. Taking the decisions of the courts as a whole, we are still in greater confusion. Until certain questions have been definitely decided, I desire to stamp on the records that go up from my section of this court some of the dangers which I think I see in disclaimers as now used. They are becoming more and more common. They are getting to be not the unusual, but the usual, thing to find in patent suits, and, as their use becomes more com-

mon, their form is becoming extreme and complicated.

Of the six patents here in suit, the first two that I shall have to consider in detail later, upon their full merits, involve claims which have been finally shaped by disclaimers. The question of the effect of a disclaimer on a claim in suit, and especially whether or not such a claim after modification by disclaimer still retains its presumption of validity, arises in this present case and requires determination by me. I had hoped that nothing would come out of the practice relative to disclaimers which would prevent every patent suit coming to the court with the presumption of validity for each and every claim of the patent. That is the general rule. I had hoped that it might be the universal ever-present rule. The reason for that presumption has heretofore been based upon the fact that a particular patent of which the claim or claims represent a definite part has been before the Patent Office, a bureau of our government, and has been considered carefully by that bureau. The particular claim has been given the presumption of validity because that department of our government, after examination, consideration, and search, even though it is ex parte, has decided that the claim is valid. Therefore the courts coming to review the claim have given to the tribunal the presumption that it has done its job well, lawfully, properly, and has reached a right decision, and this presumption passes to the grant or patent itself.

I had thought that perhaps the test as to whether or not a particular disclaimer should be allowed and the resulting claim permitted to stand could be determined by a consideration of the original claim, the claim as reshaped by the disclaimer, and the specification and drawings of the patent. I had the further thought that the court could then say whether or not, in truth and in fact, what was claimed as new and useful in that claim then presented to the court, as worded after the disclaimer was entered, had been before the Patent Office for consideration, and that, if it had not, then it would not be a proper disclaimer. The Patent Office does not consider any disclaimer as to the merits of its subject-matter. If the courts are to give approval to disclaimers which so alter the claim that the resulting novelty disclosed by the modified claim is never passed upon by the Patent Office, then such claims should come to the court without any presumption whatever of validity. Thus the burden rests upon the plaintiff, the proposer of a disclaimer claim in such a patent, to prove it to be

valid without the assistance of any presumption in that respect. If the law is to be that such disclaimers are to be permitted, and such claims are susceptible of being held valid, then they should come to the court without any presumption of validity.

By way of illustration, I refer to Permutit Company v. Wadham et al. (C. C. A.) 13 F.(2d) 454. It was plain that the Patent Office had erred and allowed a claim which read directly on the prior art. The Patent Office thought it was new in that particular form of apparatus for the water to pass through the zeolite in any direction. The Patent Office, believing that long step to be entirely new, decided it to be worthy of a patent. The specifications and drawings showed that in the particular structure of the patent the water passed downwardly through the zeolite, and the disclaimer disclaimed all methods of flow except the downward flow. In other words, the novelty claimed in court after the disclaimer was not what had been allowed by the Patent Examiners, or what they considered, but was in fact something that was never before them. Whatever genius, skill, and value there may have been in the step to downward flow of water, the Patent Office did not consider it; the Patent Office had no knowledge of a claim for that particular direction of flow. The Patent Office erroneously thought that it was new to flow the water through the zeolite in any direction, and, weighing that broad step, thought it long enough and important enough to reward it with a patent. We do not know what the Patent Office would have decided had it known that it was old in the art to flow the water up through the zeolite and that the only novelty was a change of direction. Such a claim disclosing such short step and little novelty was never considered by the Patent Office. Now so long as the Patent Office never considered that specific thing, namely, the step to downward flow, it would seem that in a case like that there should be no presumption on the part of the court that the step covered by the claim after the entry of the disclaimer was new and useful, that it involved genius, or that the claim was valid.

For another illustration, let us pass to what is known as the Welch Plug Case. Hudson Motor Car Co. v. American Plug Co. et al. (C. C. A.) 41 F.(2d) 672, 673. There was a claim allowed in that patent for a concave metal disc to be put into a hole in an engine casting, which hole was desired to be closed. When placed in the hole, the disc was hit with a hammer, thereby pressing out the edges causing the latter to engage the walls of the hole. The claim as originally shaped showed plainly that the Patent Office thought that the prior art was so unoccupied that there should be allowed a claim for any plug of that kind used in that way. It turned out that the prior art was such that the thing which the Patent Office had weighed and considered was old, and the only thing that was new, if it was properly shown in the patent, was the forming of the edges of the disc cylindrical by cutting the disc after it was first concaved. It was finally held that this construction was not shown at all, or at any rate the Court of Appeals was not satisfied that the drawing illustrated the thing attempted to be covered by the disclaimer claim. Suppose the drawings had shown this particular shape, namely, the straight cylindrical edges of the convex disc, after it had been convexed or concaved, then I take it that under the decision in the Permutit Case the disclaimer would have been allowed. If it had been allowed, the disclaimer claim certainly defined a step which never had been weighed and considered by the Patent Office. The Patent Office had never decided whether or not discs of that particular kind, old in every respect, except as to the particular angle and shape of the edge, constituted an invention.

I see no reason why the trial court should approach a claim of that kind with any presumption that it was valid, when the whole situation shows that the thing had not been considered by the Patent Office at all.

Referring, for illustration, to another case arising in this particular section of this court, that of Frigidaire Corporation v. General Necessities Corporation (C. C. A.) 46 F.(2d) 58, it was attempted to disclaim in that case so as to limit certain claims to a particular size or diameter of pipe for the tubing of the refrigerating structure. Here again this particular matter set up by the disclaimer was new, was a thing that was not considered by the Patent Office at all in its examination. Just applying ordinary logic, therefore, it is a certainty that this matter later included in the claims by disclaimer represented a step not weighed, not measured, and not considered by the Patent Office. The fact that the Patent Office would allow a claim on the broad structure means only that it thought the broad structure represented the open field that had not been claimed by any previous patentee, or inventor, or shown in any structure.

Until this matter has been finally decided, I will lay down the rule for this court

that, when disclaimers of the type here in suit are included in a patent and come before this court, they come to the court *without any presumption of validity of the claim to which the disclaimer applies*. This I rule in the present case. The claims of the first two Borst patents, which are reshaped by disclaimers, are of the type I have described and are *not* entitled to any presumption of validity. Who has said that these claims were good to the extent that this court should start out with any such presumption? The general rule in the federal court is that he who alleges the thing bears the burden of proving it. One of the cases where that is changed is the ordinary patent case. I hold, therefore, that claims reframed by disclaimers of this type come to this court without this presumption of validity, and the burden rests on the plaintiff from the outset to satisfy the court by a fair preponderance of evidence that they are valid.

I have in mind what has been said about being fair and generous to the patentee, but I fear that this may overlook the other side of the picture, something now frequently occurring with certain disclaimer practice. This country has always wanted to encourage invention and induce men to create inventions, giving them the reward of seventeen years' monopoly in order that they might contribute improvements to the world. At the same time, the law looks to the future for benefits to accrue to the public. After seventeen years has run its course, then the public is to get the benefit of that thing previously monopolized. The Patent Office is packed full of these patents which have run their course and which belong to the public. They have expired so far as the monopoly of the patentee is concerned, but, so far as the public is concerned, the public is in full enjoyment. As they expire, the public comes into that remainder interest for eternity.

The great commercial interests of our country are striving to manufacture things for the public, and we want to encourage them to make things serviceable and cheap for the use of the public. They have the benefit of all these expired patents, and the right to acquire privileges under the unexpired patents by dickering with the patentees, their successors and assigns. These business interests serving themselves and the public have to employ their lawyers to guide them. They want to make the best thing they can as cheaply as they can. They are honest, at least most of them. They do not want to steal something that does not belong to them. On the other hand, they do not want to pay royalty where they should not pay it. If they can honestly escape it, they want to do that, and they have a right to do it. They employ their lawyers. They search these old patents and live patents to find out whether or not they can do the thing they want to do. The lawyers find these expired patents which still teach these old things which belong to the public. They find a new patent with claims reading directly on the old structures, and advise the client that the patent is void. Their client goes ahead and undertakes to manufacture the thing that he wants to make on the theory that the patent is void. He builds up his business and gets started. He is sued. Then a more thorough study of the art is made by counsel for plaintiff. He finds that the patent in suit claims broadly what was old. He finds in the drawings or specifications some little thing which differs from the old art and is like the thing that the defendant is doing. Then he disclaims everything in the world *except the thing that the defendant is doing and is ready for trial*. The defendant in such a case has built up honestly a business around a condition as it was at the time, and then he finds himself in court with quite a different situation. This is part of the other side of the picture. More than that, when the defendant comes to the trial of that case, he is forced to try out an issue that has never been presented in the Patent Office. The patentee claims to have invented something new at a time far remote from the time of trial. The issue is often one which was never dreamed of when the defendant set up his defense in his pleadings. The disclaimers were filed shortly before the trial in the case at bar. It is difficult for a court of equity to add its seal of approval to a procedure such as I have described.

For the purpose of illustration, I again refer to two of the cases from this court. In the Permutit Case it was necessary for the defendant to try a lawsuit brought on a method claim comprising water flowing through zeolite in any direction, but changed by disclaimer to a claim with the water flowing through it down hill. In the Welch Plug Case, defendant was compelled, not to try a lawsuit on the patent as it was issued by the Patent Office, involving whether or not a claim was valid for a convex metal disc to be put into a hole and hit with a hammer, but whether or not it was novel to go from that sort of disc to one of the particular kind; namely, with a straight edge formed after the disc was convexed. The defendants were forced at a late date to try out a new issue

when the facts had been shaped by people who lived, acted, and worked in the distant past, always a difficult thing to do. To permit disclaimers of this kind at these late dates and particularly after the testimony has been taken, places a heavy burden upon the business world, and creates many problems for the trial courts—all of these could be avoided by rejecting disclaimers of this kind and requiring patentees to resort to the Patent Office for relief by reissue.

Another thing these disclaimers do in nearly every case is to define the claim in a most unusual way. The wording is so unusual and so difficult to comprehend that you just cannot take the original claim and the disclaimer and shape a claim that reads in the way that any good solicitor draws claims. Speaking by way of illustration and with some exaggeration perhaps, the usual disclaimer claim is very much like a solid block of marble. The dealer in marble delivers the solid block and tells his purchaser that it is a Madonna. When the purchaser complains, the dealer says: "All you have to do is to knock off all of that block except what represents a beautiful Madonna." There is so much difference between the block of marble and the Madonna which the sculptor produces that the two can hardly be considered as the same. There is so much difference between the original claim of the patent and the claim as worded by this type of disclaimer that the same analogy applies. They are substantially as far apart as the block of marble and the Madonna. The difference between the water flowing through the zeolite in any way (broadly), and water flowing through the zeolite in a downward direction (specifically), represented a valid patent in the Permutit Case. The difference between the disc with edges of any shape, and the straight or cylindrical edges formed in a concave or convex disc, after convexing, would have been sufficient to make a valid patent in the Welch Plug Case, if the feature had been plainly shown in the drawings or described.

It would seem as though the same reasoning would lead over into the Frigidaire Case. In that case the diameter of the tube was the thing finally decided by the patent owner to be of real value, although it was not claimed at all in the original patent. Many years after the original patent issued, this thing upon which the Patent Office never passed was injected into the claim, something I consider contrary to the patent statute (Rev. St. § 4917 [35 USCA. § 65]) which makes disclaimers applicable to the situation where "patentee has claimed more than that of

which he was the original or first inventor or discoverer," whereupon, under certain conditions, this patentee, according to the words of the statute, may "make disclaimer of such parts of the thing *patented* as he shall not choose to claim or to hold by virtue of the patent," etc. So in the Welch Plug and Refrigerator Cases attempt was made to cover something not originally claimed, in contradiction of the statute, when it is a basic principle of disclaimer law that that which is disclaimed shall have been claimed *in one way or another*.

I shall later refer to the application of this principle to the present case, when treating the particular disclaimers which were entered in the first Borst patent and second Borst patent. Nearly every one of these cases of disclaimers that has come before me, has been of the type of the block of marble out of which the Madonna was carved by discarding the part they did not care to use for the statue, or attempting to recarve the statue to make a sculpture wholly different. This thing is done, not by defining the lines that shape the piece of sculpture, as would seem required by the patent statutes concerning definite claims, but by discarding everything that is not wanted, and using a process of elimination and remainder purely. I believe that these misfortunes result from a misapplication of the disclaimer law. Unless the courts can interpret present statutes in such a way as to protect the business world and at the same time protect patentees, then legislation to do so should be enacted.

I had thought it could be done by requiring a reissue and proceeding under that method in all cases, unless it could in fairness be said that the very thing which was claimed as invention in the disclaimed claim had been fairly presented to the Patent Office in such a way that the court could give to it the presumption of validity.

Under present conditions, it is necessary for business men and their patent lawyers not only to read the claims of patents, but to search the drawings and specifications to see whether or not there is something else shown, a picture of a Madonna somewhere in the background, that somebody with glasses will say is plainly disclosed. If it gets down to a question of whether it is plain or not plain, we are liable to inject something into the patent that is going to be weighed differently by different sets of glasses, and seen in different lights. The patent lawyer and the business man are not going to be able to see whether the Welch plug feature of novelty as

belatedly presented in the disclaimer is plain. One will say it is plain, and the other will say it is not plain. There is not going to be anything to measure it by. Although the claim calls for a block of marble, we are liable to get into court with a Madonna or a cigar Indian, depending on what pictures may be hidden away in the patent gallery.

Again, I had supposed that even though the construction shown in a patent would not work if built just exactly as it was disclosed, but by applying mechanical skill it could be made to work, then if the invention were new and helpful to the art, and a step forward involving, not mechanical skill, but inventive genius, the patent for the invention should be validated. But, if we are going to allow patents containing disclaimer claims for things not claimed originally, because something is shown in the drawings and specifications, then it seems to me that the drawings and specifications must disclose an invention which will clearly work and can be followed strictly and accurately by those versed in the art. If we are to be burdened with disclaimers of this kind, then we must lay down a rule for these special types of claims whittled out in that sort of way that will not admit of a Madonna being converted into a cigar Indian, or vice versa at the whim of a plaintiff. We must let the patent come into equity not only without the presumption of validity, but the patentee should be held right down to a structure that is clear and will work for the reason that he has not proclaimed to the world what his invention really is. He has claimed a broad one that is not the real one, and in some cases he claims what he never before claimed. The usual reason for filing a disclaimer is that the claim as allowed is a void one; the patentee having claimed a thing he was not entitled to claim because it was old. This is the way the majority of these cases develop; in fact, something that was old has been claimed, and claimed broadly, and then through disclaimer out of the block of marble is to be hewn the Madonna, instead of leaving the original block of marble that was thought to have been the invention.

If he has shown it, but has not claimed it, then surely it must be a vision that will be discernible and workable by one skilled in the art in order for him to use that for the pattern by which he is going to hew the Madonna out of the block of marble, for it is only upon this theory that he has given something to the public.

This becomes of importance in the present case wherein it is clear that the drawings and specifications of the first Borst patent illustrate or describe certain arrangements and constructions inconsistent with the disclaimer claim at least in respect to the lack of disclosure of elevation of the trailer during the coupling operation. Supports for the front end of the trailer are shown, which supports are not operative and cannot be made to work as disclosed in the patent without material modifications. The proofs support this, and plaintiff's counsel at the trial acknowledged that the patent was defective in this latter particular, though claiming the defect was remediable by exercise of mechanical skill.

As an example in this connection, I might refer again to the Frigidaire v. General Necessities Case. Suppose the patentee there had shown a system of refrigeration that would not in fact work because of some defect in some part of it that did not have to do with the particular size of the tube. Suppose the disclosure of the right kind of tubing to be employed was plain and that there was no question about the size of the tubing, but, when the apparatus was built, certain other parts of the structure would not work at all, and therefore the tubing could not do any good or in practical effect was of little or no utility because of the other imperfections in the machine. Suppose further that the prior art answered the claim, the validity of which was in question, but, if this claim could be reshaped to bring out the particular size of the tube, there would have been enough invention to demonstrate real inventive genius. Now I ask, What does the public get out of that sort of a patent? The public had no more reason to think that it was necessary to copy the particular size of the tube, according to the original patent, than that it was necessary to copy the defective things of the patent. Obviously, it cannot be expected that the public will get much benefit out of a patented structure that is not workable in its entirety, and which claims nothing new. Therefore, if the types of disclaimer claims we are studying are to be held valid, they should come to the court without any presumption of validity. They should not be held valid unless based on a structure shown which will work as shown. And disclaimer claims of the type being considered should not be permitted, as was said by the Court of Appeals in the Welch Plug Case (Hudson Motor Car Co. v. American Plug Co. et al, supra), except where the subject-matter of the disclaimer is plainly disclosed by the specifications and drawings.

Now I shall go to the merits of each of

the patents of plaintiff in suit in deciding this cause, and finally to the counterclaim patent of the defendant, in regular order.

I shall treat first, however, defendant's contention that, of the five patents of plaintiff, the first three are paper patents, and must be viewed accordingly.

As to the first Borst patent, the evidence shows that the main feature, the trailer controlling brake mechanism, was conceded by the patentee, Borst himself, to have been a flat failure, or an impossibility, as a result of observations that he made after building one of his complete devices. No devices were built in accordance with the patent disclosure respecting the supports at the front end of the trailer vehicle, which, as previously stated, are concededly inoperatively shown. The proofs only show that the coupling parts of the first Borst patent, assuming them to have been actually invented by Borst, were embodied and used in one machine, the so-called Learman job, on which the trailer control brake feature was entirely absent. The foregoing substantially indicates the extent of use of the Borst invention of the first patent, as there is no proof clearly showing use of any additional devices.

As to the second Borst patent, the proofs show that Borst never actually embodied this invention in any full size construction. The limit of his effort toward actual reduction to practice of the invention of the second patent was to make a working model, which model was not put in evidence in this cause, being alleged to be rebuilt into a later type of improved model structure. A model of this patent put in evidence by defendant (Defendant's Exhibit No. 322) shows this construction also will not work; proper turning of the trailer behind the tractor being prevented. It is further shown by the proofs that after the year 1919, Borst went out of the business having to do with automotive devices and his patents lay dormant until about the year 1924, when they were resurrected by the plaintiff herein, who then became interested therein, and later purchased the patents in or about the year 1926, because in the view of plaintiff's counsel, the patents would cover the types of machines which plaintiff was marketing, or proposed to market. The proofs show that the plaintiff is not actually making a coupling device for trailer vehicles like the showing of the coupling parts in the first Borst patent, of which the rotatable pin 19 and head 18 are essential features; also, as will be later mentioned herein, the plaintiff does not utilize the principle of construction and operation of the second Borst patent in the actual machines which the plaintiff is building to-day. As to the Land patent of this group of the first three of plaintiff's patents, no actual use in the commercial field has ever been made. It is shown that the patent was acquired a few weeks before the filing of this suit, and no notice of infringement of the patent was shown ever to have been served before the suit.

The inoperativeness of the supports for the trailer at its front end and the trailer brake control, as shown in the first Borst patent, is conceded in the case; a serious question was raised by the evidence as to the complete operativeness of the showing of the second Borst patent; and defendant's expert maintained, without refutation as to certain material aspects of his contentions, that the Land patent structure is one which could not actually be built and rendered available for practical commercial use, even if constructed according to the principles and disclosures taught in said patent, after insertion of new matter subsequent to its filing date.

It would appear from the foregoing, therefore, that the three patents above grouped together, do not represent constructions that have actually ever gone into commercial use, but are being relied upon by the plaintiff to dominate an art which at the time of the dates of these patent applications was very considerably developed. Under these conditions, it is difficult to attach to patents of this nature any pioneer significance such as is sought to be obtained by the plaintiff, even without regard to the state of the prior art, which as to these three patents will later be shown to be anticipatory of the essential things purporting to be disclosed in the first patent, and such as greatly to limit the scope of novelty of the second and third patents, ignoring the questions of operativeness and utility.

I find applicable to the first three patents here those authorities that require that, where the patented invention makes little or no practical contribution to the art, the claims of the patent under such conditions must be literally interpreted, or viewed in a most restrictive sense, if they are to be validated. See Deering v. Winona Harvester Works, 155 U. S. 295, 15 S. Ct. 118, 39 L. Ed. 153; Lovell v. Seybold Mach. Co., 169 F. 290 (C. C. A. 2); Wilson Trolley Catcher Co. v. Frank Ridlon Co. et al., 173 F. 310, 311 (C. C. Mass.); Elvin Mechanical Stoker Co. v. Locomotive Stoker Co., 286 F. 311 (C. C. A. 3).

Since it is clear from the evidence that the defendant has not adopted any of the particular devices that are shown and described in the first and second Borst patents, nor the device utilized by Land, the claims of these patents in fact being limited claims even on their faces, this cause might be disposed of on the basis of a holding of noninfringement, in view of the above authorities.

But the extensive proofs are required to be considered from other angles, and the patents will each be treated and my holdings relative thereto definitely expressed as regards other grounds.

### The First Borst Patent No. 1,374,352, Issued April 12, 1921, Filed May 20, 1918.—

There are two claims in suit here. One of them is claim 2, concerning which a disclaimer has been filed, and the other is claim 8, in connection with which no disclaimer has been made. As I see these claims, I do not discover any substantial difference, the added parts of claim 8 being inferentially necessary in claim 2; and I assume plaintiff's counsel made the disclaimer with reference to claim 2 upon the belief or the theory at least that this claim is too broad and is met by the prior art, and left claim 8 in its original condition in order that, if the court should feel the other way about it, his client's rights would be protected.

One relief that comes to me in patent cases, in which they are different from some of my work, is that I know that practically all of these cases are going to be reviewed by a very able court, and, if I am in error, the mistake will be corrected. If I am wrong, I know I am going to be corrected, and I desire to be corrected under such conditions.

Reverting to my reference to claims 2 and 8 of this patent, and the disclaimer applicable to the former, the mode of disclaiming one and not the other may be a very proper thing to do, but I have expressed the way the matter looks to me as it has happened.

Claim 2 as found in the patent is as follows: "2. The combination of a tractor having a platform normally inclined rearwardly, a coupling member on said platform, a trailer having a skid-like member adapted to be engaged by the upper face of said platform when said platform is moved backwardly underneath the front end of said trailer, said skid-like coupling member being adapted to swing said platform into horizontal position when said platform is moved underneath said

trailer, and means for connecting said coupling member."

The disclaimer affecting this patent reads as follows: "All tractor-trailer combinations, as claimed in claim 2, except one in which one engaging member has a projecting part which, as the tractor backs into the trailer, enters between spaced portions of the engaging surfaces on the other engaging member to guide and allow fore and aft movement of the engaging members to and from final coupling relation by relative fore and aft tractor-trailer movement only, and in which the engaging members cooperate in an automatic elevation of the front end of the trailer as the tractor backs into it in coupling, and an automatic lowering of the front end of the trailer as the tractor pulls away from it in uncoupling."

The defendant's fundamental defense is that of noninfringement; it contending that, whether the claims are valid or invalid, it has not availed of the construction of the patent. It is further contended that the claims are not valid in view of the state of the prior art. Evidence was introduced to show the patentee's construction to be impractical, and of mere paper calibre, as previously mentioned. There is the added defense that one Learman, who Borst testified received his first coupling device, originated this device, and not Borst.

A further defense is raised by the defendant by a motion to dismiss, relying on the case of Ensten et al. v. Simon Ascher & Co., 282 U. S. 445, 51 S. Ct. 207, 75 L. Ed. 453, the defendant contending that Borst, having knowledge of the failure and impossibility of using his trailer control brake features, should have disclaimed all of those claims of his patent directed thereto, under R. S. §§ 4917 and 4922 (35 USCA §§ 65 and 71), and, for willful neglect and delay in so doing, his patent is void.

Taking up the disclaimer phase first, original claim 2 as to which the disclaimer applies, and claim 8 that has not been disclaimed or modified, as I see it, are for the Borst device without any elevation phase of construction or operation at all. These claims are directed simply to the sliding of the skid members 24 of the trailer onto the lower platform or fifth wheel 14 at the rear end of the tractor; the latter being normally tilted down. This platform 14 with the chain 15, and without having the pin 19 and head 18, but instead having the hole that receives the pin 19, are parts of a previously known machine, the United tractor, of which Borst,

the patentee, was a sales agent. In other words, original claims 2 and 8 develop the idea of bringing the tractor and trailer together by the sliding of the part 24 onto the down-tilted platform 14, and the natural thing for the operation of sliding the parts together was to have the platform 14 normally tilted back. That was old in the art. The Knox tractor utilized this identical feature of a rearwardly tilted platform mounted on springs as shown in the Borst patent (see Defendant's Exhibit No. 6, photos No. 1784 and 1853); the United tractor licensed in manufacture by the Knox people utilized the same feature and was the machine which Borst sold Learman before Borst's device had been applied thereto; the Curtis-Pope Lumber Company tractor (see Defendant's Exhibits No. 209 to 211, and Defendant's Exhibit No. 18, photos), referred to in the testimony of H. B. Church at the trial, also depositions of witnesses C. C. Church, McCarthy, Vox, Brown, and Hopson, showed the downwardly tilted flat plate fifth wheel idea to be old. In all of these structures the platform or fifth wheel was rendered horizontal after the coupling took place. I do not think there was any invention in doing that thing, and only that thing, in view of the state of the art referred to, and other art that has been presented to me in this case. I think that claim 2 would have been void on the prior art, and I think that claim 8 is void on the prior art, because they both read on the prior art. I think a fair reading of the prior art patents shows that the features covered in these claims were all old, both as originally claimed and as the disclaimer claim reads.

I do not discover any material difference whether the female or spaced parts are carried by the tractor, or by the trailer; the prior art showing such parts in both ways, accomplishing substantially the same functions, whether arranged as stated or in a reverse manner.

Special reference may be made to the French patent of Jagenberg, No. 355,154 of 1905, where the lower fifth wheel is slit or made of spaced parts, and the male part is on the trailer, and slides between the spaced parts which form the female member. The construction in this French patent is a mere reversal of the arrangement of the male and female members as shown in the first Borst patent, but in the French patent we find practically all the elements set up in claims 2 and 8 of Borst even to the extent that the male coupling member has a rocking mounting which affords the necessary relative pivoting movement of the trailer and tractor in a vertical plane. The skid members 24 of Borst constitute a very imperfect fifth wheel, if such a name could be applied thereto. I do not think that Borst intended to make a fifth wheel out of these parts, and they are not so described in this first Borst patent. In fact, I do not think he was thinking much in terms of fifth wheels in developing the construction of his patent. This patent is top-heavy with his trailer brake control mechanism. By this I mean that the specification of Borst indicates that his idea and means for controlling the movement of his trailer was the predominant thing in his mind, and this thing not only runs in his specification, but in his drawings. He does get away from this a little in the claims, but the idea is top-heavy in the claims. The trailer brake control is the thing he was thinking about in this patent, and seeking primarily to cover, and, instead of trying to provide a kind of coupling that would be used for a fifth wheel, the coupling feature itself is a part of and dominated by his big thought to which his specification is practically entirely devoted, namely, the brake control for the trailer, including the drum beneath the platform 14 used in order to maintain alignment of the trailer with the truck, an idea or principle of action which Borst himself testified was a failure and an impossibility. The fact is that his patent construction provides the head 18 at the top of his king pin 19 large and elongated because such construction was necessary in order that Borst might get his brake control. This undoubtedly is the reason for his making the head 18 that way. It was not for draft purposes or fifth wheel purposes, as normally understood, that he made this coupling device at all. He devised the device entirely of the size shown and with the particular shape, and the peculiar arrangement that he had as an ingenious arrangement to be used in connection with his brake control. When he came to the skid members 24 he was not attempting to make them wide to get the usual fifth wheel protection against lateral tilting, but he made them narrow, just wide enough to engage the large head 18 on the pin 19, and to be fastened to such head. He was not thinking about an upper fifth wheel at all. The proofs show that in the Learman construction as distinguished from the construction in his patent, he had to place a circle or ring adjacent the skid members 24 to obtain a fifth wheel function. So I say he did not make his drawings to illustrate a fifth wheel purpose for the skid members 24. He did

not draft his specification for that purpose. He had in mind his trailer control brake drum feature 21 as the all important thing. The use of this drum and controlling parts caused him to employ a coupling device, so that in this way he gets partially into the fifth wheel phase, and he put in claims on the coupling device, and described the feature in his patent so as to cover his entire structure; the whole time having in mind and the whole invention being dominated by his trailer brake drum construction as the main thing.

I think I might very well, as to claim 8, say it is not infringed because defendant does not employ in its device the specific parts referred to in this claim, but the claims of this patent here in suit I think are void. Claim 8 is void, and I think claim 2 would have been void, if not disclaimed, for the same reason, as being met by the prior art devices such as Jagenberg, Pescatore, Curtis-Pope tractor trailer vehicle of Defendant's Exhibit No. 18, photos and Exhibits No. 209 to 211, and perhaps others, and lacking invention in view of Winn patent, No. 1,249,705, or Bryon, No. 1,175,046, who use permanently inclined platforms. So far as the general construction of a tractor platform with a vertical coupling member having at the upper end an engaging head, and a trailer with a skidlike member to couple thereto, is concerned, this construction is shown by Winn, No. 1,249,705, on which the claims read, excepting that Winn provides a rigid inclined platform with a horizontal platform, instead of a tilting platform. Attempting to give any broad interpretation to Borst creates anticipation by Winn, who has the skidlike coupling member on the trailer, engageable with the coupling member on the platform together with means for connecting the coupling members, consisting of a draft pin device 23; Winn in considerable measure being closer to the Borst idea of coupling means than anything the defendant employs.

Defendant does not use any coupling member equivalent to the parts 18–19 of Borst, and if the claims 2 and 8 are read broadly without regard to real equivalency of parts acting like the coupling members 18–19, the claims are met by Defendant's Exhibit No. 18, Church machine of Curtis-Pope, where the lower inclined rocking fifth wheel has an opening to receive a king pin much the same as is the principle and construction of defendant's fifth wheel. Defendant does not employ a coupling member on a platform such as Borst discloses, or any equivalent means. Defendant is also closer to the Church and United or Knox tractor and trail-er combinations of the prior art than to Borst. Even if Borst had something broadly new, and I have held to the contrary, his claims cover constructions unlike defendant's in principle, and would not admit of interpretation to include the latter, as has been previously intimated. See Gordon Form Lathe Co. v. Walcott Machine Co., 20 F.(2d) 675 (D. C. Mich. 1927). In this case the court held the defendant borrowed from the prior art more than from anything shown in the patent in suit.

I think claim 2 of Borst's first patent would have been void if not disclaimed, not only for the same reasons as claim 8, but I think that claim 2 as disclaimed is void for the reason as brought out by the evidence that Borst does not show a workable structure. I am saying this about claim 2 applying certain doctrines that I have elucidated in discussing the general subject of disclaimers at the commencement of this opinion. I refer now to my remarks upon the subject of the necessity of the patentee showing a workable structure, or one which is clearly operative, if disclaimers of the sort of the disclaimer in this patent are going to be presented to the court.

I am therefore disallowing claim 2 because, as already pointed out, the structure described and shown by the first Borst patent is not workable. I disallow that claim and declare the disclaimer void, first, because the elevation is not shown. I will put it in the language of the Welch Plug Case (Hudson Motor Car Co. v. American Plug Co. et al., supra). I know that case well enough to know that it applies here. The proposition of elevation is not plainly shown in the drawings of the Borst patent. It is not shown or disclosed at all as I interpret the patent. The specification at no place described elevation of the trailer on coupling of the trailer to the tractor. The claims in suit, Nos. 2 and 8 as originally drawn, do not mention elevation, let alone claim it, and the other claims of the patent fail to mention elevation. Plaintiff's expert, Mr. Taylor, when cross-examined, stated he could find no reference in the specification and drawings to a lifting or elevation of the trailer. Surely this court should not be expected to find a disclosure of elevation if plaintiff's expert is unable to find it. The proposition of elevating cannot be said to be plain any more than the alleged novel feature of that plug in the case above mentioned. This feature of elevation is not as plain as the controversial feature in the Plug Case, where the Court of Appeals said: "We cannot be satisfied to find in this partic-

ular drawing, unaided by the specification, a sufficient disclosure of the specific invention upon which it is now sought to support the disclaimer. The thought now said to be vital was seemingly not in Welch's mind, and the indication of it in the drawing may well be incidental and accidental."

Paraphrasing the Court of Appeals, I say elevation was not in the mind of Borst when he applied for his patent. Borst in his entire patent is referring to and attempting to develop the advantages of his trailer control brake drum, and, so far as he talks about any coupling device that enters into a fifth wheel function at all, it is the peculiar kind that he needs and shows and desires to employ because of using the trailer control drum. He in no way presents the feature of elevation of the trailer in his specifications, claims, or drawings, and I do not think he ever had any thought about that. His drawings show an opposite intent because in figure 1, where the tractor and trailer are illustrated coupled together, the trailer is at the same height from the ground or pavement as it is in the illustration in figure 2, where the tractor and trailer are shown uncoupled. This supports clearly the view that elevation was not in his mind and was not intended to be shown by his patent, even if it actually existed in his device. Certainly, therefore, elevation is not workably shown, nor are the supports workably shown in his drawings, and to get elevation he would have to change or modify, or invent a new construction for the supports. He was not thinking in terms of elevation of the trailer, or he would have in some way given expression to this thought in his patent in some place. Borst formed the front ends of his skid members 24 by tapering them upwardly. That was the natural thing to do; namely, to round them off upward. We find that expedient practised everywhere. As to the roller bearings 26 in figure 6, I think Borst had in mind the rolling of his skid members onto the lower fifth wheel platform 14 in using those rollers, just as he describes the action, and without elevation. The rollers are just as applicable for that purpose as they are for elevation, for which reason I do not think we can read a novel function for these parts into the patent when it is not described or shown plainly. There is nothing in figure 6, or in these specifications or drawings, that indicates in any degree to me that he was teaching to the world the elevating of the front end of a trailer by sliding of the two parts of the coupling device together. Therefore, the disclaimer being directed to elevation, not found as a feature of the patent expressed in any of the accepted modes of presentation of an invention in a patent, cannot be valid. Never having claimed elevation in his claims, Borst cannot disclaim what he did not claim originally, and the authorities support this view clearly as laid down in the decision of the Supreme Court in Hailes v. Albany Stove Co., 123 U. S. 587, 8 S. Ct. 262, 31 L. Ed. 284, and in the case of Westinghouse Air Brake Co. v. New York Air Brake Co. (C. C.) 139 F. 267.

Applying this law to the present case, the plaintiff having had Jagenberg brought to its attention, and the prior art devices of Winn, the United tractor and the Knox tractor tilting platforms for fifth wheel connection, the Curtis & Pope tilting fifth wheel structure, some twenty days before the trial date, has attempted by this disclaimer to write a new claim for something wholly without the sphere or compass of any original claim of its first Borst patent. This also applies to the disclaimer claims of the second Borst patent. The Permutit Case is clearly distinguished from the one now before me in this aspect, because there the claim originally presented and affected by the disclaimer was held clearly to have broadly included the feature later limited by the restriction to the downward flow of the water through the zeolite. The first Borst patent here plainly suffers under the same handicap as the Welch patent in what I call the Welch Plug Case as that patent was finally interpreted by the Court of Appeals of this circuit.

Finally, by way of application of the disclaimer law as I see it, and having presented my views at the outstart hereof, I apply the two things there fully treated to Borst claim 2. The plaintiff is not entitled to any presumption that this claim is valid and good. The disclaimer is an attempt to amend the claim. It is a sort of left-handed way of saying: "Here is a claim that is this, except it is not this, and we disclaim everything else." There is no presumption of its validity. Moreover, I do not think that the construction of the first Borst patent would work as it is drawn. There are many things about the patent construction that show it is intended to work in a different way from that which the patentee through the present plaintiff is attempting to show in this case. The patent contains drawings of something. It pictures something that was had in mind at the time the invention was made. Later at least one device was made something like it, but, if that particular device worked, the evidence shows it had a number of changes from

what the patent shows. Therefore, for that reason, I say we cannot pick out the feature of elevation from this thing which would not work, as disclosed in the patent, and add it into a claim that is only framed by way of a disclaimer directed to something not originally disclosed. For these reasons, I disallow claim 2 and declare it void. There is much more I could say about the patent from the viewpoint of the disclaimer, referring as it does to elevating and lowering a trailer, an idea clearly old in Fescatore, Winn, and Byron, and even in Martin's old machine of photographs, Defendant's Exhibits No. 275 to 279, but I have gone into detail perhaps too much already.

Now there remains to be disposed of the defense of prior *actual* invention by one Learman, and use by him, of the coupling parts of Borst's patent as set forth in the claims in suit, and I shall briefly dispose of this defense.

There have been proofs introduced here concerning the first and second Borst patents in an effort to carry the dates of the inventions of these patents back of prior art or prior inventions set up in defense. These proofs include the effort on the part of the defendant, the Highway Trailer Company, to show that Borst received his idea from Learman, in respect to the coupling device described and illustrated by Borst in his first patent as a feature of the so-called trailer control brake or drum mechanism. The said Learman and his son testified at the trial, for defendant, Learman being a witness referred to in Borst's original deposition at Buffalo. He, not having been produced by Borst, was produced by defendant to rebut the testimony of Borst. Thereupon the plaintiff, who had previously taken the depositions of Borst at Buffalo, brought Borst and other witnesses to the trial to refute the testimony of Learman. I make the holding that the proofs on this phase of the case, that is, the evidence of Learman and his son, and that of Borst and his witnesses, is not of the type sufficient to place either side in a different position than when the case came before me on the patents and applications for patents. In other words, I do not regard the testimony in this connection as sufficient to change the situation of the patent dates of filing in respect to the two Borst patents.

■ To take up first the testimony of Learman relating to the first Borst patent coupling device particularly, tending to show that Borst stole his notions, I will say that we are now in a branch of the law, patent law, which is very clear and well settled. Any claim of that kind tending to destroy the originality of the patentee, before it can be entertained by the court, must be shown by very convincing and strong evidence. It is well recognized that the memory of man is not sufficient to meet that test. There must be something more tangible. We look for records that fix dates, a very definite sort of thing to tie to, and I do not find that in this case. I do not think it is necessary for me to put into the record anything detrimental to either one of these men, Learman or Borst. They are their own types. I do not think there is any difference in the whole testimony that cannot be attributed to the faulty memory of men who are interested. We all know that even on a ship the passengers are prejudiced in favor of their own particular ship, and it is surprising how this prejudice appears from the testimony given by such passengers in admiralty cases. Here these men are more interested than the passengers of a ship in the case of a collision. Here we have a couple of business concerns that have collided in a lawsuit, and these witnesses are more interested certainly than would be the passengers on a ship. They have no dollars and cents' interest, but they are on opposite sides of each other, if nothing else. They are their own types, as I said before.

We have Learman, a physical worker. He is the type of man that I recognize and know well. He is like the guide in the woods. He will invent more in a minute when he gets in a pinch than some college engineer or highly trained fellow in an office will think out, from a practical standpoint, in a year. Learman claims he proposed the coupling device and sketched it for Borst. But how much he suggested to Borst I cannot tell. He thinks he suggested this coupling device to Borst, and Borst thinks he thought it out himself. On this whole branch of this case before me, in respect to originality of invention, as between Learman and Borst, and the times of Borst making his inventions, there is very unsatisfactory testimony.

Then I get over to Borst's testimony respecting the inventions of his two patents, and he disputes himself. I do not have to find some other evidence to dispute Borst. He disputes himself from one time to the next time, but I do not attribute that to his being an untruthful man. I am not going to mark down any of these men as untruthful men, but I am going to stamp all that testimony of Borst's and Learman's as being not of that safe and sound kind on which a court can rely, and lay the foundation for a deci-

sion. All we have of Learman is his memory and the unexplained possession by him of the old patterns. We go over to Borst's testimony, and he has more data in the way of sketches and drawings, but he has so many marks on these, and so many reasons for the marks, that he is not sure what they mean. I do not attribute this to dishonest reasons, but at the same time he has juggled these data around, for his convenience, and with a slipshod way of doing things, until he is not sure what they mean. His testimony shows that. He testified to certain things, and then finds it necessary to correct the testimony. That does not show dishonesty on his part, but it shows the danger of trying to treat testimony of that kind as decisive of anything for either side. So I leave both the plaintiff and the defendant where I find them in this phase of the case. This means that I have considered the Olds patent as a part of the prior art of invention. I do not take Borst back far enough to get ahead of it. It means that I have considered the Borst patents as they come to me from the Patent Office, with the dates thereon and with the disclaimers, and do not undertake to change those, either to tear them down or to stretch them out longer than they actually are, having in view this testimony of these witnesses including the Learmans, and Borst, with his witnesses, Cordes, Pundt, and others, which rests so entirely on their memory.

■ *Second Borst Patent, No. 1,383,381, Issued July 5, 1921, Filed June 19, 1919.*— I think of this patent along with what we have called the third patent in this suit, namely, that of Land, No. 1,400,752, issued December 20, 1921, on an application filed June 14, 1920. The defenses respecting these two patents are similar to those previously stated. As to the second Borst patent and the Land patent, defendant maintains it does not infringe any claim relied on by plaintiff, in that defendant's full automatic machine, which is the only one involved, utilizes a construction of support comprising a sliding auxiliary frame mounted on the trailer, and in one unit said support having means to connect with the fifth wheel of the tractor. Defendant contends that the construction and principle of operation of its full automatic is totally different from those presented in the Borst and Land patents.

Defendant further has attempted to show that certain phases of the construction of Borst are inoperative to carry out the actions described in his specifications. Also it is maintained that any attempt to interpret the claims of Borst broadly renders them void in view of the state of the prior art.

Treating the Borst second patent more in detail, it is noted that Borst conceived an idea of mechanism which may have had novelty. I am inclined to think that the specific mechanism did have novelty in this art. I have seen the prior art spread out at length, studied it, and there are many things very close to the Borst construction. I am not going to declare this patent invalid in view of the prior art, but I do not find the meat of the invention therein disclosed in the defendant's structure. In view of the prior art, and in view of the claims of this patent, it seems plain to me that what Borst thought of and what he conceived was the putting of a sliding piece on his frame, then attaching his support for the front end of the trailer at two points, one point on the frame, and the other point on the slide. When these two points are far apart, Borst's supporting wheels would be up in an inoperative position, and, when the points are brought close together or moved toward each other, so to speak, then the supporting wheels would be down in an operative position. By regulating the movement of the parts referred to, that is, the pivot point on the frame and the pivot point on the slide, and by having the said points slide on radii that intersect, Borst gave them the kind of movement he wanted for the purpose of lifting and lowering his wheel support. It seems to me that his invention, if present, consisted of using his peculiar devices comprising the slide mechanism referred to; the slide being bumped by his tractor as he backed the latter, or this being done by hand, in other words, the sliding performed by hand. The testimony raises the question as to whether it is possible to perform the sliding by hand, but I pass this phase of the matter. I do not think there was anything new in having this sliding done by a tractor, or anything new in having it done by hand. What Borst invented and what he intended to invent, and what he showed to the world, was that, in this trailer art, you could make use of the principle that, if you have a support, you can lift it if you attach it at two places or points to two relatively sliding parts by pulling these parts apart, or you can lower it by pushing the said parts together. It is a principle that is old, but it is one that is useful in his peculiar structure. Borst had a particular form of slots and connections in his slides and guides, the same crossing one another to accomplish the particular elevation and the particular lower-

ing that he wanted. But I think the big outstanding thing in his mind and in the claims of his patent (which are directed to the slide mechanism alone, and do not include positively the tractor in the combination), and the only thing he taught that was worth while getting a patent on, was that idea of attaching his support at two points to two parts, the relative sliding of which may bring the points together or separate them for lowering and raising the wheeled support, respectively. His tractor slides back into the frame, and he described it may manually be pulled forward on the trailer, and these actions elevate and lower the legs or supports. The foregoing construction is very close to the French patent of Mennessier, No. 479,016. There is no question about that. On the subject of validity, the problem is very close. I should have difficulty, if this Borst construction of the second patent had been copied by the defendant so that the patent could be said to be infringed, in upholding this patent. But I am relieved of that problem by the fact that the defendant does not have this patented construction. I cannot see any mechanical resemblance between defendant's device and Borst's device, and my conclusions are based on actually witnessing the operations of full-sized machines of the type made by defendant. In Borst we have a specific type of mechanism that is made of three absolutely distinct parts, and I am not thinking about the shape of these parts, or the length of them or the breadth of them, but there are three distinct and necessary co-operating parts running right through this patent, the so-called second Borst patent. There is (1) the frame; there is (2) the slide on the frame; and there is (3) the support that moves relatively to the slide.

The fact that the slide moves on the frame makes it possible to attach the support to the frame at one point, and also makes it possible to attach the same support to the slide at a different point so that the relative movement of the frame and slide raises and lowers the support. Now that is the principle found in the Mennessier French patent, and that principle of Mennessier is the one so close to this of Borst's. But the defendant's full automatic device is not like either one of them in that respect. Defendant's slide and support are one unitary structure, not two relatively moving parts. The defendant has only two parts. I am ignoring the fifth wheel phase, as this patent does not concern that feature. We are considering a patent covering a support, a frame, and a slide.

Borst never intended to cover a support which slides upon the frame, after the manner of defendant's device. He does not show such a thing, he does not talk about such a thing in his specification, and he does not teach it. If he did, we should have to go to an entirely different branch of the old art to find anticipation, rather than the branch we are now having in mind. Borst shows what looks more like a frame with a slide on it, and the French patent shows what appears more like two parts of the frame, one telescoping into the other, but the principles are so nearly alike that the Mennessier French patent would make me hesitate very much about the allowance of the patent to Borst on his claims. At any rate, this is the prior art that one would go to because it is along the same line as Borst's and Land's; these three using at least three separate parts, the frame with a sliding part on it, or the frame divided and telescoping itself, the support being connected to each of the relatively slidable parts for the purpose of elevating and lowering incident to the movement of said slidable parts relatively to each other.

Now if we take the defendant's structure and a patent based on that structure (of which two have been granted already to defendant), we would start out and search a different field of the old art. It is, of course, the same general art of trailers, but it is a widely separated field in such art, with a fence between it and the field in which the Borst and Land constructions lie. The reason for this is that defendant slides the support itself upon its frame, and, by its manner of connecting the support to the frame at two points, and by the manner of sliding the support upon the frame, defendant gets it into its up and down or inoperative and operative positions, as it has been here characterized. In other words, defendant does not use the Borst patented idea of his peculiar slide instrumentalities and a support operated thereby.

Again reverting to whether or not I would allow a patent for the idea used by defendant, if I were in the Patent Office, I would examine those patents like the ones to Olds, where the support slides directly in the trailer without an intervening part. One can conceive the structure of Borst and the structure of defendant finding their origins in two different streams—one, the defendant's, where the support is directly attached to the body of the trailer and slides on the trailer body as a unit; the other employing an intervening part originating back with the old prior art of the French patent of Mennes-

sier, and coming down to the second Borst construction in which there are connected to the support two pieces which slide upon each other, each piece connected to the support. These are two different ways of getting elevation and lowering of the support. One is not the other under the rules of either mechanical or patent equivalents. See Lewis Blind Stitch Machine Co. v. Arbetter Felling Machine Co., 219 F. 563 (C. C. A. 7), and Beck-Frost Corp. v. Ford Motor Co., 44 F. (2d) 521 (C. C. A. 6).

The fact that one end of defendant's structure is employed for fifth wheel purposes, as I said before, does not affect the matter. The fact that defendant's structure is butted by the tractor in order to raise the leg does not alter the situation. In the prior art patents, as of Barber, No. 1,179,793, the supports or legs were knocked up by the tractor, and this patentee proposes to put a slide on his tractor to move the legs on the trailer. The movement of the legs or supports by the tractor is exemplified in other patents such as Barber, No. 1,153,538, and Olds, No. 1,316,735, and others. Thus the prior art shows that part of the idea is surely old. So I hold that the second Borst patent is not infringed by the devices manufactured by defendant because, as stated, the defendant does not avail of either the construction or the principle of action of the plaintiff's particular patent discussed. If the patent be limited to the precise instrumentalities of the slide mechanism, guides, support, and peculiar connections hereinbefore referred to, it may be valid, though of most restricted scope in the light of the prior art patents set up in relation thereto. The Olds patent, having been filed a considerable period prior to the 1919 filing date of the second Borst patent, is prior invention relative thereto in view of my holding that the effort of Borst to make good his priority proofs was futile by reason of the inadequate nature of his showing.

As to the second Borst patent, there has been filed a disclaimer, as was true in respect to the first Borst patent. Now regarding the disclaimed features of this second Borst patent, the disclaimer is of a type all its own. I do not know how to classify this disclaimer. As typical, I refer to that affecting claim 2, which is one of the seven claims in which disclaimers were entered, and quote it as follows: "Petitioner disclaims any and all supporting mechanism specified in claim 2 except such wherein the horizontally slidable means is actuated by a portion of the tractor when backing the rear end of the tractor underneath the front end of the trailer, to move the slidable means rearwardly, thereby causing the movable supporting element to move upwardly into operative position."

Defendant contends with force that the disclaimer is attempting to inject into the claim as a part of its combination a tractor construction and function, when the original claim contains no reference whatever to a tractor, but is directed merely to a supporting mechanism for a trailer. Defendant also contends with force that plaintiff is attempting to broaden claim 2 to take out the limitation therein concerning the connection for moving the supporting element to operative position. Defendant contends that the reason for the disclaimer is because plaintiff has found the construction of claim 2, and other claims in which disclaimers are entered, are inoperative as claimed. There is full authority for the position that a disclaimer must limit and not broaden a claim. Also defendant maintains that the claims in their original condition are anticipated and the disclaimer aims to set up a new combination in the effort to avoid such anticipation. See Dunbar v. Myers, 94 U. S. 187, 24 L. Ed. 34, and Marconi Wireless Telegraph Co. of America v. De Forest Radio Telephone & Telegraph Co., 243 F. 560 (C. C. A. 2), and Hudson Motor Car Co. v. American Plug Co., supra.

If this disclaimer is permitted, the limitation regarding movement of the supporting element "into operative position" is practically rendered useless, or done away with, and thus it results in broadening the claims. Again, claim 2 originally contains no reference to a tractor as an element thereof, but the disclaimer introduces the tractor, making a new claim out of the original. This applies to other claims. See Carson v. American Smelting Co. (C. C. A.) 4 F.(2d) 463.

The "adapted" clause in each of claims 1 and 4 is only descriptive and does not make the tractor a part of the combination expressed. Brown Mfg. Co. v. Deere et al., 61 F. 972 (C. C. A. 7).

This disclaimer with all of its peculiarities does not disclaim any of the construction that I have fully treated in my observations by which I reach the conclusion that this patent is not infringed by the defendant's machine. The disclaimer does not change this aspect of the claims or of the case, and I might well let the matter stand upon what I have previously announced respecting noninfringement. This disclaimer furnishes an example of another unfortunate use of this peculiar practice. The plaintiff has dis-

706

claimed, after a manner, a use, as I interpret the matter. It does not disclaim any structure or any element of a structure. Apparently the attempt is to disclaim the operation of the slide mechanism by hand; this being the feature defendant asserts is not operatively disclosed. In order to obtain a ruling and clarify the practice, I declare this kind of a disclaimer improper and void.

■ The authorities are clear that a patent owner may not by disclaimer rewrite a claim as attempted to be done here, to meet the exigencies of a particular case.

■ *Land Patent, No. 1,400,752, Issued December 20, 1921, Filed June 14, 1920.*—Now we come to the patent to Land, which is the third patent in suit. I have already referred to this patent in discussing the Borst second patent because the same principles are utilized in both of these patents.

The construction of Land was inoperative as the same was first disclosed to the Patent Office, and new matter was introduced into Land's alleged invention in order to make the same at least operative on paper. No refutation of this latter contention as to Land was offered by plaintiff. Land's construction is one that has never been used in practice. No practical commercial use of Land was proved to have ever taken place. A practical commercial tractor-trailer machine could not be built and made to work, employing the instrumentalities disclosed in the Land patent, after he added his alleged new matter. Any attempt to stretch the terms of the two claims of Land in suit, in an effort to read them upon the defendant's full automatic machine, leads to their anticipation by the prior art.

Land adds little that is new to Borst, excepting that, instead of having spaced sliding members such as Borst uses near the sides of the body of the trailer, and controlling the movement of the support by slots in the frame or guides and slots on the sliding parts, Land conceived of using a reach centrally and slidably mounted on the frame of the trailer. The reach is formed with rack teeth, and, when the tractor is coupled, it moves the reach back. When the tractor is pulled away or uncoupled, it pulls the reach out the distance necessary. By this movement of the reach upon the body of the trailer and the suitable connections, Land arranges to have as many operations as he sees fit to perform in the trailer. One operation is the elevating and lowering of the support, another the braking of the wheels of the trailer, and another the dumping of the body of the trailer. Then he provides for doing

two of those things manually, if desired, something defendant does not do. I can hardly conceive invention in taking a sliding mechanism like Borst and changing it over to a sliding mechanism with teeth along the reach. It is unimportant to this suit, in my judgment, because it is my view that it is not necessary to pass on the question of validity. Land has the same method or principle of action of his parts as in the Borst second patent. He has followed along the Borst line of march. Land uses a support with connections to the reach, and with connections to the body of the trailer. Land avails of the principle of pulling apart the points of connection of the support with the sliding reach and with the body of the trailer, and moving the said points of connection together. Thus he obtains elevation and lowering of the supports upon the same principle that is employed by Borst and the same one that is taught in the French patent of Mennessier. For the same reasons, therefore, that the defendant does not infringe Borst, defendant does not infringe Land.

In view of the holding that I make finding that the defendant does not infringe, I pass the defenses raised that the Land patent is invalid because introducing new matter in order to make this construction operative, when concededly (see file wrapper contents Defendant's Exhibit No. 137) the original disclosure of the construction of the invention to the Patent Office was not operative, and I also pass the defense strenuously urged by defendant that, even as Land's invention has been modified and supplemented by new matter introduced without the submission of oath of invention, the construction cannot be actually built and operated on the mechanical principles disclosed in the patent. The defense of new matter is serious and alone might be considered sufficient to invalidate. No attempt was made to refute it by the plaintiff. Defendant's expert testified that in a number of particulars Land's construction could not be adopted and put into a shape enabling it to actually operate to perform its several functions.

The evidence shows that the Land patent construction was never used in the practical commercial art. Land really made no contribution to the actual development of the art, any more than Borst did with his two patents of prior date. The record shows, too, that Land was preceded in the art by Johnson (patent No. 1,373,431), who testified at the trial, and whose machine discloses the combined brakes and folding support features, operated by the tractor, in what is clearly a

practical type of machine. In view of Johnson and Davis patent, No. 1,381,861, plaintiff is not entitled to any interpretation of Land's claims to cover the defendant's construction.

*Hartwick Patent No. 1,351,245, Issued August 31, 1920, Filed December 24, 1919.*— This is the fourth patent in suit, and plaintiff alleges contributory, not direct, infringement. The defense is again the fundamental defense of noninfringement. An additional defense is that, in view of the prior art, especially the prior inventions of the Martin and Farr patent, No. 1,412,025, Morrison patent, No. 1,441,292, based on applications prior to Hartwick's Amman patent, No. 774,903, and a number of patents for constructions as found in Campbell, No. 717,163, the Hartwick patent is invalid for lack of invention.

The question of contributory infringement presented here is very interesting, and involves a determination of what actually constituted the subject of Hartwick's invention as shown by his patent.

A man who first invents something useful that has, say, three elements working together in a novel way, and *his invention consisting of the use of the three things operating in combination,* is entitled to a patent for such invention. Another party cannot, during the life of that monopoly, engage in the business of making any one of those three parts for the purpose of furnishing them to be used with the other two. This is clear and plain, and the law on that subject is well defined. The law is also well settled as to what may be done by way of furnishing repairs for a patented article.

The only place where trouble and confusion arises is in those patents which do not clearly disclose just where the invention begins and where it ends.

There is difficulty at times in determining just what the invention is. The mere words of the claim ought not to be controlling. It is for the court to look at the invention, view the field of the prior art, and, by study of the specifications, the drawings, and finally the claims, determine what is the thing that the patentee has invented. See Evans v. Eaton, 7 Wheat. (20 U. S.) 356, 430, 431, 5 L. Ed. 472; and Burr v. Duryee, 68 U. S. (1 Wall.) 531, 17 L. Ed. 650.

The first five claims of the Hartwick patent are directed primarily to features of construction as to which there is no allegation here that the defendant is using them in any way. Included in these claims, however, are elements that are concededly old in the prior art and were used long before Hartwick entered the field. For instance, as to claim 1, the old elements are defined as "means mounted on a trailer adapted to engage said circular member." These means are nothing more nor less than a king pin or bolt, and an upper fifth wheel or circle as it is called in the art. As to claim 3, the elements long used before Hartwick and specified in the claim, in addition to his alleged new construction which he claims to have actually invented, are stated as follows: "A plate adapted to be secured to the trailer, and a hub on said plate, a ring connected to said plate, and a king bolt extending down from the hub."

Hartwick did not invent these old elements which have been noted respecting claims 1 and 3 by way of example. The novel constructions which Hartwick invented, assuming their novelty as I shall do, are elsewhere specified in the claims, and such constructions are admittedly not being made by defendant. Those elements quoted above as old in the prior art, in the same general combination as found in Hartwick, are shown clearly in the prior invention of Martin and Farr (patent No. 1,412,025), conceded by plaintiff to be earlier than Hartwick. In fact, plaintiff's president, Fruehauf, admitted that he had seen the Martin and Farr patented device, which has the same general combination, prior to the plaintiff starting to develop the Hartwick invention. But circle fifth wheels and king-pins on trailer machines were old elsewhere in other prior patents such as Shadbolt, No. 1,213,280, Peets et al., No. 1,300,003, Martin, No. 1,183,313, and Farr, No. 1,169,717.

It is contended by plaintiff that defendant makes these elements that are concededly old in the prior art, as quoted above, and, since they will work in conjunction with the other parts or features of the claim of the Hartwick patent, there is contributory infringement.

So reverting, I ask, what is the new and useful thing that was invented by Hartwick? Then having found that out and marked its outline, no one can go inside the line and make any part of that invention to be used with other parts. But all the world can go right up to the line and make things to fit on that invention. That seems to be right. They can make a place for the invention to be used, or a thing with which it may be used. That is not harmful. That is not discouraging to the patentee or to inventive genius. Rather is this an encouragement to the in-

ventor, for if a man invents something, whether it be to go on a wall or set on a stove, he is lucky if somebody else will build a wall upon which his patented device can fasten or operate, and he is lucky if somebody will build a stove that is so designed as to accommodate his patented device and can be used with it. It would be unfair to turn this around the other way and say that because a man has invented something he can go beyond that invention of his own and thus control the manufacture and use of all those things on which his device might rest, or with which it might operate, and which were needed for its success in the world.

Our problem here is entirely one of analyzing the Hartwick invention, putting a line of demarkation around it, so that we can see upon what the patentee has been given a monopoly, and then see that he gets the benefit of that monopoly, but not let him control something already old and outside of the thing which he has invented. This is the problem as I see it that we have in the Hartwick patent, to study the patent specifications, drawings, and claims, in the light of the prior art, of course, to determine the thing Hartwick has done and see where it begins and where it ends, where the line fence is between the things that belong to Hartwick and the things that belong to the public. With this view of the matter, it is not necessary for me to pass upon the validity of Hartwick, and I give this patent its presumption of validity and dispose of it entirely on this question of contributory infringement.

As suggested above, it was old in the art at the time of Hartwick entering the field to have an upper fifth wheel on a trailer with a male member or king-pin appended thereto, the latter carried by a bolster plate. It was old also in the art to have a tilting lower fifth wheel on the back end of a tractor, with a slit in it, tilted to receive the king-pin carried by the trailer, and it was old for the king-pin to come in and trip a lock mechanism in the center of the lower fifth wheel in such a way that it would automatically lock the king-pin in position so that the upper and lower fifth wheels would function together when connected as fifth wheels and pull the trailer after the tractor. For this general combination, see Martin and Farr, No. 1,412,025, supra, a construction known to plaintiff before Hartwick's invention.

Hartwick invented, not a new use for the upper fifth wheel, nor a new use for the male member of the upper fifth wheel. He still used the previously old king-pin to trip the lock contrivance in the center of the low-

er fifth wheel. The previously used king-pin came into the slit in the same way as before, doing the same job of tripping as before. Hartwick invented, if anything, a different automatically operating lock member for locking that king-pin which came in as before, and performing its old function in every way after it was locked. Hartwick invented a double acting spring device, which defendant does not use at all, to do the work of the two separate spring parts as found in Martin and Farr, No. 1,412,025, and Farr, No. 1,169,717. As to the king-pin, Hartwick did not need to make any changes in it. He could use it just exactly as he found it, and plaintiff's counsel so conceded at the trial. Hartwick could have built his lower fifth wheel to fit some old one that was then in existence if he wanted to. He is not to be condemned or criticized, or lose one iota in this case because he did that. He took this old fifth wheel of the Martin and Farr type, and made this change to these different automatic lock and spring arrangements, undoubtedly for the purpose of escaping infringement. But, whether that was so or not, it does not matter. He had a right to do it. But the thing invented is an improvement in that automatic locking device and spring device. All the improvement lies in the lower fifth wheel contrivance. I see no more reason for including in his invention the upper half of the fifth wheel and the pin that trips the lock than I do the part of the trailer which holds the upper fifth wheel. They are necessary for the structure. It is necessary to have a trailer. But those parts forming Hartwick's invention go with the lower half of the fifth wheel, and simply operate in conjunction with the already old upper fifth wheel parts. Any changes that may be necessary in the upper fifth wheel to fit this construction in the lower fifth wheel are purely mechanical and could be avoided by making this structure to fit any upper fifth wheel. The fact that the invention does not when analyzed in reality include those parts that are carried by the trailer is demonstrated by the last two claims of Hartwick's patent, which do not contain in any way the particular upper fifth wheel parts. To read into the Hartwick claims, as parts of his invention, those old devices carried by the trailer body, which latter the public has a perfect right to use and used long before Hartwick's invention, would be to give to the Hartwick claims in suit a scope to which they are not entitled. Indeed, claims of the type under discussion have been held invalid for the very reason that they have included things al-

ready old in the art in their structure, thus creating what are known as unpatentable combinations, sometimes characterized also as not true combination claims. See Jacobs Mfg. Co. v. T. R. Almond Mfg. Co., 169 F. 134, 139 (C. C. E. D. N. Y.) ; also, Langan v. Warren Axle and Tool Co., 184 F. 720 (C. C. A. 3).

If I were to apply this doctrine to the Hartwick patent in this case, I should have to declare the claims in suit invalid because Hartwick did not invent the combination which includes in it those parts that are carried by the trailer. See In re Hawley (C. A. of D. C.), decided December 5, 1905, Pat. Off. Gazette vol. 121, page 2,691.

All Hartwick invented, as stated before, was whatever new features may be said to exist in the lower fifth wheel structure. I have analyzed the Hartwick patent to determine what is believed to be construction that he may have invented, and which may be new, and to give him the benefit of these things, rather than invalidate his patent. Since the defendant does not make anything like those things alleged novel in the Hartwick lower fifth wheel construction, it does not infringe. It is not a contributory infringement to make certain things mentioned in the claims of Hartwick that consist of parts that are already old in the art and not susceptible of monopoly. They are merely descriptively included in the claims and are on the outside of the fence that enclosed Hartwick's invention. A patentee cannot invent new improvements, under the established law as I see it, and by mere words include that which is old in his claims, along with his improvements, so as to thereby keep the public from using the thing which is old.

A man who invents a lower fifth wheel construction that goes on the truck is lucky to have people make trailers that will hitch onto it. The line fence which marks the boundary of the patent is between this lower fifth wheel construction of Hartwick and the upper fifth wheel, and the defendant has not crossed that line fence, and has not invaded the field that belongs to Hartwick, but has operated outside and in the field that belongs to the public.

Those things which are old and public property in the field of invention cannot be made the subject of an attack for contributory infringement on the theory of the plaintiff in this case. In the very recent case of Carbice Corporation of America v. American Patents Development Corporation and Dry-Ice Corporation of America, 283 U. S. 27, 51 S. Ct. 334, 75 L. Ed. 819, 8 U. S. Pat. Q. at page 211 (patent invalidated, 283 U. S. 420, 51 S. Ct. 496, 75 L. Ed. 1153), the patent in suit comprised a transportation package of special insulating construction, and the claim included the element of a quantity of common frozen carbon dioxide as a part of the construction of the package. The Carbice Corporation was charged with contributory infringement because it sold carbon dioxide to customers of the Dry-Ice Corporation with knowledge that the carbon dioxide was to be used by the particular purchaser in transportation packages like those described in the patent. It was held that the Dry-Ice Corporation had no right to be free from competition in the sale of solid carbon dioxide.

Plaintiff is attempting to prevent the public from making unpatented devices, or devices which are public property, when the alleged novel features of the Hartwick invention cannot be said to circumscribe any such old devices whatsoever by a proper interpretation of the scope of the invention that is fenced in by the terms of Hartwick's claims.

I find in favor of the plaintiff, Fruehauf Company, the issue raised here as to unclean hands. The plaintiff is frank in saying that they took the fifth wheel as they found it in the old Martin and Farr construction of patent No. 1,412,025, and placed their improvements and changes upon it, reassembling in those features what was old. It is no different from the situation that we find when we get over to the sixth patent, that of the counterclaim in which they are the defendant. They make their pintle hook like the defendant's, and I dare say on the advice of counsel that they had a right to. It may show poor taste if I paint my house just like my neighbor's next door. It shows lack of originality on my part, but no violation of the law. I give the plaintiff in this suit as clean a bill of health as this court is capable of doing. Every right they have is entitled to a fair consideration by this court.

*Schneider et al. Patent, No. 1,613,723, Issued January 11, 1927, Filed March 9, 1924.*—The defenses against this patent are particularly that of invalidity. The patent is directed to what is usually characterized in the art as a four-wheel trailer as mentioned at the outset of this opinion. The claims of the patent are directed to features of spring suspension and shackle mountings, with radius rod connections and certain stop devices, the last to limit the turning of the truck frames, relatively to the main chassis frame of the vehicle. Substantially all of the

things disclosed in the Schneider et al. patent are commonly used in the prior art.

As intimated above, the four-wheel trailer art is highly developed, being very analogous in some respects to the construction of the vehicles in the farm vehicle art. Thus it is that here we find these patents for inventions which are pretty close to mechanical skill improvements, and in this Schneider et al. patent, the thing developed was the result of mechanical skill. The improvements are so nearly like the things that were old, and so nearly like the things in other arts, as not to amount to invention. We had the underslung springs differently disposed to regulate certain relative heights of parts of a vehicle and to obtain certain convenience, for instance, to have a buggy high or low. There has been shown substantially this sort of thing in the art of four-wheel trailers itself. The patent of Liedebrand, No. 1,417,846, shows generally all that the Schneider et al. patent shows as to the spring mountings and shackle arrangements. Also radius rods were old long before Schneider et al. entered the field, and to the use thereof cannot be ascribed the dignity of invention. With certain kinds of shackles the art teaches no radius rods would be employed; with others, radius rods are used. The art is prolific in disclosing such use of this common expedient long before the patent under discussion was applied for. Stops for limiting the movement of the vehicle parts, and indeed stops for all purposes, are common in the arts. Nothing in this patent rises to that degree of genius which constitutes invention. The features of this patent are the work of a good mechanic. With the teachings of the prior art known, one could tell a draftsman how he wanted the truck frames mounted respecting the wheels, by springs and shackles supporting them high or low, at the sides of the truck frames or beneath, such arrangements being old, and the mechanic would work out that sort of thing very easily. I think it would be a misfortune for the courts, always having in mind that we want to encourage inventive genius, to hold this sort of a patent good. The features relied on for novelty are trivial. Men building these things are going to work out such features and do things of this kind all the time. The world is not searching or crying out for the development of things of this sort so easily comprehended within the scope of a mechanic's knowledge.

Sustaining patents for developments of the limited scope of novelty of this one would tie up business and destroy commerce, rather than help it. Having in view the state of the art, what was old in buggies, old in automobiles, and old actually in these trailers of the four-wheel type, as shown by the prior art patents set up in defense, the claims here in suit are declared to be void.

Defendant also interposes the defense of lack of title of the plaintiff to the Schneider et al. patent. Legal title to the letters patent is in the plaintiff by reason of the grant to it. The defense involves the fact that the patent was applied for in the name of Charles Lawrence Schneider and his coinventor, Harvey C. Fruehauf, but the assignment to the plaintiff was made by one Lawrence C. Schneider (see Defendant's Exhibit No. 140) and the coinventor, Harvey C. Fruehauf. The question of whether Charles Lawrence Schneider and Lawrence C. Schneider are the same person is raised. No proofs were adduced by plaintiff. In view of my holding, however, that the claims in suit are void, I have held that the title to the patent is in the plaintiff.

■ *Defendant's Patent of Clement, No. 1,408,501, Issued March 7, 1922, Filed October 22, 1919.*—Now we come to the defendant's counterclaim in this suit, and that patent is much like the one of Schneider et al. that I have been talking about.

Clement proposes a special form of spring-actuated lock member to lock in closed and open positions, a guard member which is used to close the mouth of a pintle hook. The hook is used primarily for towing trailers.

I could easily hold the Clement patent not infringed. These pintle hooks are old; hooks are generally old. It was old to put a little clasp over the end of a hook. A fraternity pin always has a catch mounted in some way to hold the pin element down into the slot of the hook. That is one way of locking any pin. Unless a patent contains something broader or more novel than this one contains, the device is the job of a good mechanic or draftsman. The government pintle hook structure here in evidence has a spring that holds the member across the mouth of the hook closed. This member opens up and the spring also will hold it in the open position. All this patent purports to do is to put on to the hook the old window stop carried by the side of the hook, and by it hold the member that goes across the mouth of the hook clear up or clear down. There was so little to this that when it came to holding the said member up they did not need this device to perform that function at all. If this patent were worth while, I could say it was not infringed, but I do not think it is any good, and I declare that claim here in suit void.

The defendant will have a decree dismissing this suit as to the five patents sued on by the plaintiff, with costs to the defendant to be taxed. The cross-bill of the defendant on the Clement patent is dismissed, with costs relative to that patent for the plaintiff. One decree will suffice for the disposition of both cases.